(No. 89795.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LEON MILLER, Appellee.

*Opinion filed November 21, 2002.*

RARICK, J., took no part.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, Kenneth T. McCurry and LaTisha R. Foster, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Deborah Israel, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

Randolph N. Stone and Herschella G. Conyers, of Chicago, and Daniel Spector, John Durrant, Mala Adiga and Megan Deluhery, law students, for *amici curiae* Edwin F. Mandel Legal Aid Clinic *et al.*

JUSTICE FITZGERALD delivered the opinion of the court:

Defendant, Leon Miller, a 15-year-old juvenile, was charged with two counts of first degree murder (720 ILCS 5/9—1(a)(1) (West 1996)) based upon accountability. Defendant was transferred to the criminal division of the Cook County circuit court and prosecuted as an adult. 705 ILCS 405/5—4(6)(a) (West 1996). Following a jury trial, defendant was convicted of both counts, and the State requested that the circuit court sentence defendant to natural life imprisonment under the multiple-murder provision of the Unified Code of Corrections. See 730 ILCS 5/5—8—1(a)(1)(c)(ii) (West 1996). The circuit court declined to impose the statutorily mandated sentence, holding that application of the statute to defendant would offend the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). Instead, the circuit court sentenced defendant to a term of 50 years in prison. The State appealed directly to this court. We affirm.

## BACKGROUND

On November 19, 1997, Tommy Jones and Keith Alexander were shot and killed outside a Chicago apartment complex. Defendant was among those charged with their murders. In a court-reported statement made to the police and the prosecution within hours of the shooting, defendant described the incident and his participation therein.

According to defendant, on the night of the murders, Arthur Beckom and Kentrell Stoutmire observed people walking through their neighborhood that they believed belonged to a rival gang. Beckom and Stoutmire approached defendant, who was standing outside on a corner in the neighborhood, and asked him to stand as a lookout. Defendant saw that both Beckom and Stoutmire had guns in their possession, and although defendant

never handled or touched the guns, he agreed to stand as a lookout. One minute later, Beckom and Stoutmire fired gunshots in the direction of Jones and Alexander, who both died as a result of their injuries. Once the shooting began, defendant ran to his girlfriend's house.

Four individuals were charged for their participation in the shooting. The first degree murder indictment charged Stoutmire and Beckom as the alleged shooters and defendant and another 15-year-old male, Douglas Baskerville, for their participation as lookouts. See 720 ILCS 5/9—1(a)(1) (West 1996). At separate jury trials, Beckom and Baskerville were acquitted. Stoutmire, who was 17 years old at the time of the murders, was convicted and sentenced to natural life in prison. Defendant was also convicted of the murders. At sentencing, however, through *amicus curiae*, the Edwin F. Mandel Legal Aid Clinic, defendant argued that a sentence of natural life imprisonment, pursuant to the multiple-murder sentencing statute, violated the proportionate penalties clause of the Illinois Constitution, the prohibition against cruel and unusual punishment contained within the federal constitution, as well as international law, which prohibits the imposition of a natural life sentence on a juvenile. Conversely, the State argued that the circuit court was obligated by the statute to impose a sentence of natural life imprisonment.

At the conclusion of the sentencing hearing, the circuit court discussed its inability to sentence defendant pursuant to the terms of the multiple-murder sentencing statute:

> "I have from the moment that the Jury came back with their findings been very concerned about what this meant, what this meant to [defendant] as a 15-year-old child, what this meant to society at large, to be part of a society where a 15-year-old child on a theory of accountability only, passive accountability, would suffer a sentence of life in the Penitentiary without the possibility of parole. *** I feel that it is clear that in my mind this is blatantly unfair and

highly unconscionable, and let me state that I do not believe for a second that Mr. Miller is innocent of these charges. I believe he received a fair trial. I believe he was adequately represented. I believe he was proved guilty beyond a reasonable doubt, and I believe he should suffer harsh criminal consequences for acting as a look-out in this case, but to suggest that he ought to receive a sentence of life without the possibility of parole, I find to be very, very hard to swallow to the point where I can describe it as unconscionable. I am concerned that a person under the age of 18 under Illinois law can do everything that John Gacy did, can torture and abuse and murder over 30 people, and would be in the same boat as [defendant] right now looking at a sentence of a minimum and maximum of life without the possibility of parole.

\* \* \*

I have a 15-year-old child who was passively acting as a look-out for other people, never picked up a gun, never had much more than—perhaps less than a minute—to contemplate what this entire incident is about, and he is in the same situation as a serial killer for sentencing purposes."

The circuit court then concluded: "[A]s applied to [defendant], and by that I mean as a juvenile on the strict theory of accountability, that the [multiple-murder sentencing statute] as applied to him is unconstitutional under both Illinois and Federal law and it violates the Illinois Constitution under the proportionality section, and it violates the 8th Amendment of the United States Constitution." Defendant was sentenced to a term of 50 years' imprisonment.

## ANALYSIS

In this appeal, we address whether the multiple-murder sentencing statute is unconstitutional as applied to a juvenile offender convicted under a theory of accountability.

At the outset, we recognize that this case presents an issue of jurisdiction. The State invokes this court's jurisdiction pursuant to Supreme Court Rule 302(a) (134

Ill. 2d R. 302(a)). However, Rule 302(a) does not provide a basis for the State to appeal in this case: Rule 302(a) applies to civil, not criminal, cases. See 177 Ill. 2d R. 612.

Supreme Court Rule 603 (134 Ill. 2d R. 603) would appear to provide a criminal counterpart to Rule 302(a). Rule 603 provides:

"Appeals in criminal cases in which a statute of the United States or of this State has been held invalid and appeals by defendants from judgments of the circuit courts imposing a sentence of death shall lie directly to the Supreme Court as a matter of right. All other appeals in criminal cases shall be taken to the Appellate Court."

Yet, in *People v. Truitt*, 175 Ill. 2d 148, 151 (1997), this court held that Rule 603 only specifies what court should hear the case and does not afford the State an independent basis for appellate review. In *Truitt*, the State appealed a pretrial ruling made by the circuit court that section 115—15 of the Code of Criminal Procedure was unconstitutional. We held that the State's right to appeal was limited to the situations identified in Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)):

"Initially, the State claimed that we had jurisdiction pursuant to our Rule 302(a) (134 Ill. 2d R. 302(a)). That rule, however, does not apply to criminal appeals. 134 Ill. 2d R. 612. Once it realized this, the State next invoked Rule 603 (134 Ill. 2d R. 603) ***:

***

The problem with reliance on this rule is that it was not intended to create an independent basis for appellate review. It merely specifies which court should hear a case that is otherwise appealable. Where, as here, the State takes issue with a nonfinal order entered by the circuit court in a criminal case, the threshold question of whether that order is appealable by the State is determined exclusively by Rule 604(a)(1) [citation]." *Truitt*, 175 Ill. 2d at 151.

Rule 604(a) restricts the State's right to appeal in criminal cases to those orders or judgments which have the substantive effect of (1) dismissing a charge for any

of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114—1 (West 1994)); (2) arresting judgment because of a defective indictment, information or complaint; (3) quashing an arrest or search warrant; or (4) suppressing evidence. 145 Ill. 2d R. 604(a)(1). We held that because the circuit court order did not fall within Rule 604(a), jurisdiction was lacking. *Truitt*, 175 Ill. 2d at 151.

However, two years later we silently deviated from our holding in *Truitt* and exercised jurisdiction pursuant to Rule 603 in a case procedurally similar to the present case. In *People v. Wooters*, 188 Ill. 2d 500 (1999), this court considered the constitutionality of a mandatory sentencing provision held unconstitutional by the trial court at sentencing. Similarly to the case before us, in *Wooters*, the State directly appealed to this court based upon the trial court's finding that the sentencing statute was unconstitutional. *Wooters*, 188 Ill. 2d at 504. Despite our holding in *Truitt*, we considered the appeal under Rule 603 without reference to either Rule 604(a) or *Truitt*.

Likewise, we consider the instant appeal under Rule 603. Pursuant to the Illinois Constitution of 1970, this court has the sole authority to regulate procedure with respect to appeals in criminal cases, subject to the limitations of the double jeopardy clauses. See U.S. const., amends. V, XIV; Ill. Const. 1970, art. I, § 10. Consistently with this authority, we find that this court must have the ability to review, in the first instance, a declaration of unconstitutionality arising in the circuit court. A finding of unconstitutionality in criminal cases by a circuit court affects the prosecution of the case and the future prosecution of similar cases. See *People v. Young*, 82 Ill. 2d 234, 246-47 (1980) ("'[s]ociety also has a broader, secondary interest in the coherent development of the law. *** The denial of review in a particular case may thus affect not

only the ability of the State to prosecute a particular case but also its ability to prosecute similar cases in the future"). Moreover, our finding that Rule 603 affords the State a basis of independent review corrects the unreasonable result created by *Truitt*. Specifically, we note that the State may appeal as of right "whenever a question arising under the constitution of the United States or this State arises for the first time in the appellate court or as a result of the action of the appellate court." 177 Ill. 2d R. 612(b) (adopting civil appeal Rule 317 in criminal cases). Under Rule 612, had the circuit court rejected defendant's challenge that the statute was unconstitutional and, on appeal, the appellate court declared the statute unconstitutional, this court's jurisdiction would be clear. No purpose is served by limiting the State's right of appeal when a circuit court, rather than the appellate court, invalidates a statute on constitutional grounds. Therefore, we find that our holding in *Truitt* with respect to Rule 603 and the State's ability to directly appeal a circuit court's finding of unconstitutionality was overly broad. Accordingly, we exercise jurisdiction in this matter pursuant to Rule 603.

Turning to the merits, our review begins with the presumption that the statute is constitutional. Because of this presumption, the party challenging the statute bears the burden of showing its invalidity. *People v. Davis*, 177 Ill. 2d 495, 501 (1997); *People v. Miller*, 171 Ill. 2d 330, 333 (1996). A circuit court's finding that a statute is unconstitutional is reviewed *de novo. People v. Malchow*, 193 Ill. 2d 413, 418 (2000).

The multiple-murder sentencing statute provides, in pertinent part:

"(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1) for first degree murder,

* * *

(c) the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant,

***

(ii) is a person who, at the time of the commission of the murder, had attained the age of 17 or more and is found guilty of murdering an individual under 12 years of age; or, irrespective of the defendant's age at the time of the commission of the offense, is found guilty of murdering more than one victim[.]" 730 ILCS 5/5—8—1(a)(1)(c)(ii) (West 1996).

We have repeatedly recognized that the legislature has discretion to prescribe penalties for defined offenses. See *People v. Taylor*, 102 Ill. 2d 201, 208 (1984). The legislature's discretion necessarily includes the power to prescribe mandatory sentences, even if these mandatory sentences restrict the judiciary's discretion in imposing sentences. *Taylor*, 102 Ill. 2d at 208. However, the power to impose sentences is not without limitation; the penalty must satisfy constitutional constrictions. See *Davis*, 177 Ill. 2d at 502; *People v. Morris*, 136 Ill. 2d 157, 161 (1990); *People ex rel. Carey v. Bentivenga*, 83 Ill. 2d 537, 542 (1981).

Here, the circuit court refused to impose the sentence mandated by the statute because it found that the statute, as applied to defendant, offends the Illinois Constitution's proportionate penalties clause and the United States Constitution's cruel and unusual punishment clause. In contrast, the State argues that the multiple-murder sentencing statute does not exempt juvenile offenders, but in fact expressly declares that juveniles are eligible for natural life. Thus, because the statute makes no exception for those convicted as accomplices as opposed to those convicted as principals, the statute's plain language required the circuit court to sentence defendant to natural life imprisonment. The

State further argues that Illinois courts have previously upheld the constitutionality of the multiple-murder sentencing statute as applied to juveniles against proportionate penalty challenges. See *Taylor*, 102 Ill. 2d at 204-05; see also *People v. Cooks*, 271 Ill. App. 3d 25, 35-42 (1995) (holding that the multiple-murder sentencing statute did not violate the United States or Illinois Constitutions as applied to a 14-year-old principal offender); *People v. Wages*, 261 Ill. App. 3d 576, 589 (1994) (holding that the "fact that defendant was 15 years old at the time that he committed the two murders is irrelevant" because "regardless of age, a defendant found guilty of murdering more than one victim must be sentenced to a term of natural life imprisonment"); *People v. Rice*, 257 Ill. App. 3d 220, 228-29 (1993) (holding that the multiple-murder sentencing statute as applied to a mentally retarded 16-year-old offender does not violate the eighth amendment of the United States Constitution); *People v. Rodriguez*, 134 Ill. App. 3d 582, 593 (1985) (holding that defendant's youth did not require special consideration and that the application of the multiple-murder sentencing statute to the 16-year-old principal offender was consistent with the Illinois Constitution's due process clause and the eighth amendment of the United States Constitution).

We reject the State's assertion that the question at issue in this appeal has been decided. Illinois courts have only upheld application of the statute to juvenile principals and adult accomplices. The issue we address—the application of the statute to a *juvenile* convicted upon a theory of *accountability*—is an issue of first impression. We begin with a discussion of the proportionate penalties clause of the Illinois Constitution.

The proportionate penalties clause of the Illinois Constitution declares that "[a]ll penalties shall be determined *** according to the seriousness of the of-

fense." Ill. Const. 1970, art. I, § 11. While courts of review are generally " 'reluctant to override the judgment of the General Assembly with respect to criminal penalties' " (*People v. Hamm*, 149 Ill. 2d 201, 219 (1992), quoting *People v. Gonzales*, 25 Ill. 2d 235, 240 (1962)), it is also true that when defining crimes and their penalties, the legislature must "consider the constitutional goals of restoring an offender to useful citizenship and of providing a penalty according to the seriousness of the offense" (*Taylor*, 102 Ill. 2d at 206). With regard to the statute at issue, we have recognized that the legislature considered the possible rehabilitation of an offender who commits multiple murder, and the seriousness of that offense, in determining that a mandatory minimum sentence of natural life imprisonment is appropriate for the offense of multiple murders. *Taylor*, 102 Ill. 2d at 206 (the mandatory sentencing provision of the multiple-murder sentencing statute does not offend article I, section 11, as applied to a 16-year-old principal offender).

However, the instant matter concerns a different type of challenge under the proportionate penalties clause and a different set of circumstances not addressed in *Taylor*. We have recognized three different forms of proportionality review. A statute may be deemed unconstitutionally disproportionate if (1) the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community; (2) similar offenses are compared and the conduct that creates a less serious threat to the public health and safety is punished more harshly; or (3) identical offenses are given different sentences. *Davis*, 177 Ill. 2d at 503-04; see *People v. Farmer*, 165 Ill. 2d 194, 209-10 (1995); *Miller*, 171 Ill. 2d at 334; *People v. Steppan*, 105 Ill. 2d 310, 320 (1985); *People v. Gonzales*, 25 Ill. 2d 235, 240 (1962). Here, the circuit court ruled that application of the multiple-murder sentencing statute to defendant was

"highly unconscionable," and, therefore, we first consider whether the statute as applied to defendant is shocking to the moral sense of the community.

In this context, we have stated:

"When the legislature has authorized a designated punishment for a specified crime, it must be regarded that its action represents the general moral ideas of the people, and the courts will not hold the punishment so authorized as either cruel and unusual, or not proportioned to the nature of the offense, unless it is a cruel or degrading punishment not known to the common law, or is a degrading punishment which had become obsolete in the State prior to the adoption of its constitution, or is so wholly disproportioned to the offense committed as to shock the moral sense of the community." *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 421-22 (1894).

We have never defined what kind of punishment constitutes "cruel," "degrading," or "so wholly disproportioned to the offense as to shock the moral sense of the community." This is so because, as our society evolves, so too do our concepts of elemental decency and fairness which shape the "moral sense" of the community. See, *e.g.*, *Trop v. Dulles*, 356 U.S. 86, 101, 2 L. Ed. 2d 630, 642, 78 S. Ct. 590, 598 (1958) (whether a punishment shocks the moral sense of the community is based upon an "evolving standard[ ] of decency that mark[s] the progress of a maturing society"). Similarly, our United States Supreme Court has stated in the context of the eighth amendment that "[p]roportionality review under those evolving standards should be informed by ' "objective factors to the maximum possible extent." ' " *Atkins v. Virginia*, 536 U.S. 304, 312, 153 L. Ed. 2d 335, 344, 122 S. Ct. 2242, 2247 (2002), quoting *Harmelin v. Michigan*, 501 U.S. 957, 1000, 115 L. Ed. 2d 836, 868, 111 S. Ct. 2680, 2704 (1991), quoting *Rummel v. Estelle*, 445 U.S. 263, 274-75, 63 L. Ed. 2d 382, 391, 100 S. Ct. 1133, 1139 (1980). However, this "objective evidence, though of great importance, [does] not 'wholly

determine' the controversy, 'for the Constitution contemplates that in the end our own judgment will be brought to bear on the question.' " *Atkins*, 536 U.S. at 312, 153 L. Ed. 2d at 345, 122 S. Ct. at 2247, quoting *Coker v. Georgia*, 433 U.S. 584, 597, 53 L. Ed. 2d 982, 992, 97 S. Ct. 2861, 2868 (1977).

We review the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency. Here, a sentence of natural life imprisonment would be the result of three converging statutes. Section 5—4(6)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/5—4(6)(a) (West 1996)) mandates that all 15- or 16-year-old offenders charged with murder be automatically transferred and prosecuted as adults in criminal court. The accountability statute (720 ILCS 5/5—2(c) (West 1996)) effectively bars courts from considering the offender's degree of participation in the crime by making all persons who participate in a common criminal design equally responsible. See *People v. Cooper*, 194 Ill. 2d 419, 434-35 (2000) (discussing accountability and the "common design" rule). Finally, the multiple-murder sentencing statute (730 ILCS 5/5—8—1(a)(1)(c)(ii) (West 1996)) does not allow a court to consider the age of the offender or the offender's participation in the crime at the time of sentencing. Under the automatic transfer statute, defendant was considered to be an adult for purposes of trial. Under the accountability statute, defendant was considered equal to the actual shooter. Therefore, defendant was tried as if he were the adult shooter in the crime. Under the sentencing statute, defendant was then subject to the most severe punishment. When these three statutes converge, a court never considers the actual facts of the crime, including the defendant's age at the time of the crime or his or her individual level of culpability.

Accordingly, we hold that the penalty mandated by the multiple-murder sentencing statute as applied to this defendant is particularly harsh and unconstitutionally disproportionate. We agree with defendant that a mandatory sentence of natural life in prison with no possibility of parole grossly distorts the factual realities of the case and does not accurately represent defendant's personal culpability such that it shocks the moral sense of the community. This moral sense is particularly true, as in the case before us, where a 15-year-old with one minute to contemplate his decision to participate in the incident and stood as a lookout during the shooting, but never handled a gun, is subject to life imprisonment with no possibility of parole—the same sentence applicable to the actual shooter. Our decision does not imply that a sentence of life imprisonment for a juvenile offender convicted under a theory of accountability is never appropriate. It is certainly possible to contemplate a situation where a juvenile offender actively participated in the planning of a crime resulting in the death of two or more individuals, such that a sentence of natural life imprisonment without the possibility of parole is appropriate. However, that is not the case before this court—as recognized by Judge Linn during sentencing, this case presents the least culpable offender imaginable, a 15-year-old who had "about a minute from the time this plan began until the act was completed by other persons."

Our decision is consistent with the long-standing distinction made in this state between adult and juvenile offenders, a distinction underscored by the reality that our state was the first to create a court system dedicated exclusively to juveniles. 1899 Ill. Laws 131; see also *People ex rel. Bradley*, 148 Ill. at 423. Illinois led the nation with our policy towards the treatment of juveniles in first forming the juvenile court, and, traditionally, as a society we have recognized that young defendants have greater

rehabilitative potential. "There is in the law of nature, as well as in the law that governs society, a marked distinction between persons of mature age and those who are minors. The habits and characters of the latter are, presumably, to a large extent as yet unformed and unsettled. This distinction may well be taken into consideration by the legislative power in fixing the punishment for crime, both in determining the method of inflicting punishment and in limiting its quantity and duration." *People ex rel. Bradley*, 148 Ill. at 423; see also *Thompson v. Oklahoma*, 487 U.S. 815, 838, 101 L. Ed. 2d 702, 720, 108 S. Ct. 2687, 2700 (1988). Therefore, in many cases courts have discretion to grant leniency to a juvenile even if he or she is prosecuted as an adult. See, *e.g.*, *People v. Kolakowski*, 319 Ill. App. 3d 200, 217 (2001) (noting that defendant's sentence was less than her codefendant's because of her age and potential for rehabilitation). While it is true that the multiple-murder sentencing statute explicitly applies regardless of the offender's age (*Taylor*, 102 Ill. 2d 201), this case does not only concern the sentence of a juvenile. Rather, this case concerns the sentence of a juvenile convicted under a theory of *accountability*. And as with juvenile offenders, courts in some cases may grant leniency in sentencing to offenders guilty by accountability. Disparate sentences between an offender convicted by accountability and a principal offender reflect the different degrees of participation in the crime. See, *e.g.*, *People v. Godinez*, 91 Ill. 2d 47, 54-56 (1982) (finding that a defendant who stood as a lookout deserved a lesser sentence than his codefendant who was convicted as the principal). However, the convergence of the Illinois transfer statute, the accountability statute, and the multiple-murder sentencing statute eliminates the court's ability to consider any mitigating factors such as age or degree of participation. A life sentence without the possibility of parole implies

that under any circumstances a juvenile defendant convicted solely by accountability is incorrigible and incapable of rehabilitation for the rest of his life. The trial judge in this case did not agree with such a blanket proposition. We also decline to find that the sentence mandated by the multiple-murder sentencing statute in this case satisfies the proportionate penalties clause of the Illinois Constitution. We affirm the trial court's finding that the multiple-murder sentencing statute as applied to defendant violates the proportionate penalties clause of the Illinois Constitution. Accordingly, we need not address additional issues raised in this appeal.

## CONCLUSION

For the foregoing reasons, we find that section 5—8—1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5/5—8—1(a)(1)(c)(ii) (West 1996)) as applied to defendant, a juvenile offender convicted under a theory of accountability, violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). We affirm the circuit court's imposition of a term of 50 years' imprisonment.

*Affirmed.*

JUSTICE RARICK took no part in the consideration or decision of this case.