(No. 92143.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RONALD KLINER, Appellee.

*Opinion filed December 19, 2002.—Rehearing denied March 31, 2003.*

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

Marshall Hartman and Anna Ahronheim, of the Office of the State Appellate Defender, of Chicago, and Jed Stone, of Stone & Associates, of Waukegan, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The State has appealed an order of the circuit court of Cook County allowing the motion of defendant, Ronald Kliner, for mitochondrial DNA (mtDNA) testing pursuant to section 116—3 of the Code of Criminal Procedure

of 1963 (725 ILCS 5/116—3 (West 2000)). For the reasons set forth below, we conclude that the State does not have authority to proceed with this appeal and therefore find that the appeal must be dismissed.

Following a jury trial, defendant, Ronald Kliner, was found guilty of the murder of Dana Rinaldi. Dana had been fatally shot five times in the face and head while seated in her car. Defendant, Michael Permanian and Dana's husband, Joseph Rinaldi, had been charged with the murder. Joseph Rinaldi eventually pled guilty and testified on behalf of the State at the trial of defendant and Permanian. Defendant and Permanian were tried together but before separate juries. At trial, the State presented evidence that Joseph Rinaldi had hired defendant and Permanian to kill his wife.

Defendant waived a jury for his death sentencing hearing. The trial court found defendant eligible for the death penalty on the basis that he committed the murder pursuant to contract, agreement or understanding by which he was to receive money or anything of value in return for committing the murder. Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(5). After considering evidence in aggravation and mitigation, the trial court found no mitigating factors sufficient to preclude imposition of the death penalty and sentenced defendant to death. This court affirmed defendant's conviction and sentence on direct appeal. *People v. Kliner*, 185 Ill. 2d 81 (1998).

After defendant's conviction and sentence were affirmed on direct appeal, defendant filed a petition for post-conviction relief (725 ILCS 5/122—1 *et seq.* (West 2000)), which the trial court denied during the pendency of this appeal. During the post-conviction proceedings, defendant filed a *pro se* motion for DNA testing pursuant to section 116—3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116—3 (West 2000)). Defendant's *pro se* motion requested DNA testing of hair evidence, as

well as other testing not at issue in this appeal, in an attempt to prove his actual innocence. Attached to defendant's motion were reports from the Illinois State Police Division of Forensic Sciences. These reports reflected that hairs and other materials were observed on the sweater vest, blouse, jeans, leather gloves, sweater jacket, shoes and socks that Dana Rinaldi was wearing when she was shot. In addition, vacuum sweepings taken from the front seat of Dana's car included hairs and other materials. Defendant claimed that mtDNA testing of the hairs would prove that defendant did not murder Dana.

In response, the State noted that prior to trial, defendant had been excluded as a possible donor of the hair found on Dana's clothing. The State further explained that testing was not done on the hairs found within Dana's car because there was no evidence that the shooter ever entered Dana's car. Rather, the evidence indicated that defendant was outside Dana's car when he shot her. For example, all the shell casings were found outside Dana's car. Dana was found seated in the driver's side of her car, slumped over to the passenger side. The State argued that, given the lack of evidence that Dana came into contact with her killer, any mtDNA testing would not be materially relevant to defendant's claim of actual innocence.

On November 20, 2000, the trial court entered a written order denying defendant's motion. With regard to the hair evidence, the trial court held:

"The request for DNA testing on hair samples also is not appropriate under the statute. Assuming *arguendo* that the technology available today was not available at the time of trial, identification of the donor of the hair found in the vehicle would not be relevant to defendant's innocence. There was no evidence at trial that the killer was ever in the victim's car. Physical evidence and witness testimony showed that the killer approached the victim as she was exiting her car and shot her in the head. There

was no opportunity for the killer to leave hair inside her vehicle. Even if donors of hairs found inside the vehicle could be identified, it does not prove that someone else committed the murder. Anyone who had been in the victim's car since it was manufactured could have left hair behind. It does not come close to proving that the defendant is innocent."

On January 3, 2001, defendant filed a motion to reconsider the trial court's order denying mtDNA testing. Defendant's motion claimed that the trial court had failed to address defendant's request to test "certain hairs found in the clutched hand of the victim and on her coat." Defendant further argued that "it is reasonable to conclude that where the hairs found clutched in the hands of the deceased are not those of [defendant], that this would be significant exculpatory evidence and may lead a reasonable trier of fact or reviewing court to the conclusion that [defendant] is innocent of the offense of capital murder."

At the hearing on defendant's motion to reconsider, the State again observed that comparison tests had been performed on the hairs found on Dana's glove. Those tests, which were performed prior to defendant's trial, excluded defendant and Michael Permanian as possible donors.

Following argument, the trial court granted defendant's motion to reconsider and entered an order allowing mtDNA analysis of hairs recovered from Dana's gloves. In entering its order, the trial court stated that:

"Well, when I made my original ruling, I was really considering my impression of the motion and of the evidence in the case that there was hair found in the vehicle and hair found in various places, like they're talking about her sweater vest and on her clothes, and, you know, I know if I looked at my clothes with a microscope, I would find my dog's hair, my children's hair and whoever else's hair. I might have sat in somebody's car, hair from their car. At that point, I did not feel it was provident.

However, now that its brought to my attention that there were, in fact, hairs, although, you know, I doubt if its going to be fruitful for the defense \*\*\*; however, as we've seen, from the most recent case law and the most recent science that it is certainly not conclusive, and I believe we're talking about a DNA test on essentially one sample of hair, and I think just to be absolutely certain, which is what we are trying to do, we should, in fact, allow the testing of the hair on the leather gloves.

I understand that we don't have any eye witness testimony. I don't know if there was a struggle. My recollection of the evidence was that she was getting out of her car when the attack occurred, and I suppose it could be conceivable that she might have been able to reach up and grab the hair of the assailant."

As noted, the State has appealed the trial court's order to this court.

At the outset, we must address whether an order allowing DNA testing pursuant to section 116—3 is a final and appealable order from which the State can seek review. After the State filed its notice of appeal in this case, defendant filed a motion to strike the notice of appeal and to dismiss the appeal on the ground that it was an impermissible interlocutory appeal. This court denied defendant's motion. In his brief, defendant again contends that the State's appeal is an impermissible interlocutory appeal because the order allowing DNA testing was not a final order.

Upon reexamining the issue, we find that the instant appeal does not fit within the range of State appeals authorized by our rules. No rule expressly permits the State to bring an appeal from an order similar to the one entered here.

Our supreme court rules provide for appeals by the State as follows:

"(1) *When State May Appeal.* In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any

of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963 [725 ILCS 5/114—1 (West 2000)]; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence.

(2) *Leave to Appeal by State.* The State may petition for leave to appeal under Rule 315(a)." 188 Ill. 2d Rs. 604(a)(1), (a)(2).

The State did not petition for leave to appeal under Supreme Court Rule 315(a) (177 Ill. 2d R. 315(a)), so Rule 604(a)(2) does not apply. Likewise, the trial court's order granting defendant's motion pursuant to section 116—3 does not fall within any of the categories set forth in Rule 604(a)(1). Therefore, Rule 604(a)(1) does not provide the State with authority to proceed with the instant appeal.

The State responds that we need not look to Rule 604(a)(1) because the order in this case was a final order, and Rule 604(a)(1) applies only to nonfinal orders. The State notes that in *People v. Savory*, 197 Ill. 2d 203 (2001), this court observed that a section 116—3 motion "seeks to initiate a separate proceeding, independent of any claim for post-conviction or other relief." *Savory*, 197 Ill. 2d at 210. Consequently, we held that the denial of a defendant's motion for DNA testing under section 116—3 was a final judgment. *Savory*, 197 Ill. 2d at 211. The State contends that it follows that an order granting a section 116—3 motion, like an order denying such a motion, is a final judgment.

Accepting the State's characterization of the instant order as a final order does not establish that the State has the right to appeal the order to this court. The State cites Supreme Court Rule 603 (134 Ill. 2d R. 603) as providing authority for its appeal of the trial court's final order. Supreme Court Rule 603 provides:

"Appeals in criminal cases in which a statute of the United States or of this State has been held invalid and appeals by defendants from judgments of the circuit courts

imposing a sentence of death shall lie directly to the Supreme Court as a matter of right. All other appeals in criminal cases shall be taken to the Appellate Court." 134 Ill. 2d R. 603.

Rule 603 does not provide a basis to appeal the order to this court. The circuit court did not invalidate a statute on constitutional grounds. Rule 603 only provides the State a basis to appeal a circuit court's finding of unconstitutionality. See *People v. Miller*, 202 Ill. 2d 328 (2002). Accordingly, contrary to the State's claim, the State does not have authority to proceed with this appeal based upon Rule 603.

We further note that in light of this court's finding in *Savory* that a section 116—3 motion is a proceeding independent of any claims for post-conviction or other relief, the State cannot look to Supreme Court Rule 651(a) (134 Ill. 2d R. 651(a)) as a basis for the instant appeal. Supreme Court Rule 651(a) provides:

"An appeal from a final judgment of the circuit court in any post-conviction proceeding involving a judgment imposing a sentence of death shall lie directly to the Supreme Court as a matter of right." 134 Ill. 2d R. 651(a).

Because the order at issue here does not fall within any of the supreme court rules allowing the State to appeal directly to this court, the State does not have the right to appeal the trial court's order granting defendant's motion for DNA testing pursuant to section 116—3. According, the State's appeal must be dismissed.

As a final matter, we note that in his brief and during oral argument, defense counsel insisted that the trial court's order granting defendant's motion must be affirmed and that to refuse to test the hairs would be to "stand in the way of the pursuit of justice." Defense counsel also likened the State's objection to the testing of the hairs as "turning a blind eye and deaf ear to Illinois' shameful history of mistake and caprice in death penalty case." We caution, however, that justice and

integrity are demanded of both defense counsel and the State under our criminal justice system.

To that end, we note that defense counsel repeatedly mentioned that DNA testing was required of the hairs found "clutched" in Dana Rinaldi's hand. Despite this characterization of the hairs, defense counsel has failed to point to a record citation indicating that the hairs were in fact found clutched in Dana's hand. Our review of the record reveals only that hairs were found on Dana's glove as well as on the other items of clothing she was wearing when she was murdered. Indeed, the references to the hairs do not even indicate whether those hairs were found on the palm side or the back side of the glove.

To the extent that any shortcomings in our criminal justice system relate to convictions secured through questionable prosecutorial practices, the answer certainly is not to give equal time to questionable practices of defense counsel. Rather, the key to insuring that criminal justice in Illinois is administered in a fair and equitable manner is to demand the highest level of advocacy and integrity from every participant in the system. This court requires that both the State and defense counsel accurately present the facts of a case.

For the foregoing reasons, the State's appeal is dismissed.

*Appeal dismissed.*