2020 IL App (1st) 172830-U

No. 1-17-2830

Order filed June 30, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 16 CR 12051 03 |
| | ) | |
| TYREN REESE, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the judgment of the circuit court over defendant's contentions that his sentence violates the proportionate penalties clause of the Illinois Constitution and that his sentence is excessive.

¶ 2    Following a jury trial, defendant Tyren Reese was found guilty of the first degree murder

of Damond Avant.[1] The jury further found that defendant personally discharged a firearm in the

_____

[1]Defendant was charged along with two codefendants, Kenyon Jones (Kenyon) and Paris Jones (Paris). Prior to trial, defendant filed a motion for severance, which the trial court granted. Kenyon and Paris are not parties to this appeal.

commission of the offense. At a subsequent sentencing hearing, the trial court sentenced defendant to a term of 22 years' imprisonment on the first degree murder count, with a mandatory consecutive 20-year term for personally discharging a firearm during the commission of the offense, for a total term of imprisonment of 42 years. On appeal, defendant contends that his 42-year sentence violates the proportionate penalties clause of the Illinois Constitution because the trial court failed to consider his youth and its attendant characteristics in accordance with the United States Supreme Court's ruling in *Miller v. Alabama*, 567 U.S. 460 (2012) in determining his sentence. In the alternative, he contends that his sentence is excessive because the court failed to consider the mitigating factors presented, including his minimal criminal history, his difficult upbringing, and his rehabilitative potential.

¶ 3                                    I. BACKGROUND

¶ 4      At trial, Takia Martin testified that on December 3, 2014, she was dating Avant. The two of them were at Avant's grandmother's house on the west side of Chicago until around 9:30 p.m. when they started to walk to Martin's house. As they were walking south down Mayfield Avenue, Martin noticed two men come out of an abandoned building next to an alley about a block away. The two men were wearing hoodies with their hoods pulled up, so Martin could not see their facial features, but one of them was thin, small and short, and the other was "heavyset." The two men turned toward them and then walked westbound into the alley. Martin and Avant continued walking south on Mayfield Avenue and when they reached the alley, Martin saw a big, burgundy-colored van driving west in the alley.

¶ 5      Martin and Avant walked about a block further south on Mayfield Avenue when the burgundy-colored van pulled up behind them. Someone inside the van opened the back door of the van and the two men she had seen entering the alley got out of the van and shot Avant. The heavyset

man shot Avant first and Avant fell to the ground. Then, the thin, short man stood over Avant and shot him several times. The two men got back inside the van and the van drove away. The police arrived about 15 minutes later and Martin gave a statement about the incident at the police station.

¶ 6 Chicago police officer Jorge Munoz testified that on December 2, 2014, he was on patrol with his partner when he observed a burgundy SUV disobey a stop sign near Mayfield Avenue and Fulton Street. At the time he observed the burgundy SUV, he was not aware of the shooting. Officer Munoz conducted a traffic stop of the vehicle and observed that there were four or five people in the vehicle. As Officer Munoz approached the vehicle, he asked to see the occupants' hands, but the vehicle drove away "at a fast rate of speed." Officer Munoz's partner put out a radio call with a description of the vehicle. Officer Munoz pursued the vehicle, but he lost sight of it.

¶ 7 Officer Richard Corona testified that he responded to a radio call regarding the burgundy SUV and he proceeded to that area. He followed the vehicle until it crashed into a light pole on Parkside Avenue. Officer Corona observed two or three men exit from the driver's side of the vehicle and noted one of them was wearing a black hoodie with dark jeans. Officer Corona pursued the men on foot and placed Kenyon in custody. Paris was also taken into custody.

¶ 8 Chicago police evidence technicians recovered seven fired nine-millimeter Luger cartridge cases from the scene of the shooting. Chicago police forensic investigators recovered three firearms from the burgundy SUV, including a nine-millimeter Ruger handgun. Based on the stipulated testimony of various experts, it was established that one bullet was fired from the Ruger handgun and that defendant's DNA was discovered on the Ruger handgun. The stipulated testimony of a medical examiner established that Avant had been shot seven times, six times on the right side of his head, and once in his right thigh. The medical examiner determined the cause

of death was multiple gunshot wounds. One of the bullets recovered from Avant's body was from the Ruger handgun.

¶ 9    Detective Greg Swiderek testified that he was assigned to investigate Avant's shooting. Detective Swiderek interviewed defendant on July 11, 2016, following his arrest.[2] The interview was videotaped and the State played the videotaped interview for the jury. Detective Swiderek testified that in the video, defendant told him he used a nine-millimeter handgun and only shot it one time. Defendant said that he got the gun from Kenyon. Defendant said he did not want to seem like a "punk," so he shot at Avant. Defendant believed he had hit Avant because Avant fell after he shot him. When defendant got back into the SUV, the other men called him a "ho" because he only fired one time. Defendant told them that his gun had jammed.

¶ 10    Following closing argument, the jury found defendant guilty of first degree murder and personally discharging a firearm during the commission of the offense. At the subsequent sentencing hearing, defense counsel argued in mitigation that defendant was only 21 years old at the time of the incident.[3] Defense counsel noted that defendant was convicted under a theory of accountability and even though he fired a gun that night, his actions did not directly cause Avant's death. Defense counsel noted defendant's limited criminal background, his family history, and his work history and asked the court to impose the minimum sentence allowable by statute.

¶ 11    In determining defendant's sentence, the court stated that it had reviewed the presentence investigation report and the statutory factors in aggravation. The court also considered the statutory and non-statutory factors in mitigation. The court stated that it considered the effect of *Miller v.*

---

[2]There is no indication in the testimony regarding why defendant was arrested nearly two years after the incident.

[3]Defendant was actually 22 years old at the time of the incident.

*Alabama*, "even though it is not applicable here." The court further stated that it had to consider the chances of rehabilitation that defendant could return to society as a youthful person. The court then sentenced defendant to a term of 42 years' imprisonment.[4] Defendant now appeals.

¶ 12                                   II. ANALYSIS

¶ 13     On appeal, defendant contends that his 42-year sentence violates the proportionate penalties clause of the Illinois Constitution where he was an emerging adult at the time of the offense and the trial court failed to consider his youth and its attendant characteristics in determining his sentence in accordance with *Miller*. In the alternative, he contends that his sentence is excessive where the court did not give adequate weight to the mitigating evidence presented, including his minimal criminal history, his difficult childhood, and his rehabilitative potential.

¶ 14                             A. Proportionate Penalties

¶ 15     Defendant first contends that his sentence violates the proportionate penalties clause because the court did not adequately consider his young age in sentencing him to a *de facto* life sentence in accordance with *Miller* and its related cases. In *Miller*, the Supreme Court held that mandatory life sentences for juveniles violate the eighth amendment's prohibition against cruel and unusual punishment. *Miller*, 567 U.S. at 489. *Miller* requires sentencing courts in homicide cases to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. The Supreme Court expanded on its decision in *Miller* in *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016). In *Montgomery*, the Court determined that *Miller* should apply retroactively and state courts must

---

[4]The court sentenced defendant to a term of 22 years' imprisonment on the first degree murder charge, plus a mandatory, consecutive 20-year term for personally discharging a firearm during the commission of that offense.

apply *Miller* in collateral proceedings. *Id.* at ___, 136 S. Ct. at 732. The Court further found that *Miller* did not prohibit all life sentences for juveniles, but reserved life sentences for "the rare juvenile offender whose crime reflects irreparable corruption." (Internal quotation marks omitted.) *Id.* at ___, 136 S. Ct. at 734. Throughout the decision, the court repeatedly stated that the decision in *Miller* applied only to juvenile offenders sentenced to "mandatory life without parole." *Id.* at ___, 136 S. Ct. at 726, 732, 733.

¶ 16     In *People v. Reyes*, 2016 IL 119271, our supreme court expanded the holding of *Miller*, finding that *Miller* applied to so-called "*de facto*" life sentences for juveniles. The supreme court found that such sentences violate *Miller* where the sentence is so long that it "amounts to the functional equivalent of life." *Id.* ¶ 9. Recently, in *People v. Buffer*, 2019 IL 122327, ¶ 40, our supreme court determined that a prison term of 40 years or more is considered a *de facto* life sentence. Further, in *People v. Holman*, 2017 IL 120655, ¶ 40, the supreme court applied *Miller* to discretionary life sentences finding that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." The *Holman* court held that "a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id.* ¶ 46.

¶ 17                              1. *Young Adults Under Miller*

¶ 18     Recently, there has been a trend in the appellate court wherein young adults seek to have their sentences invalidated on the basis of *Miller* principles. See, *e.g.*, *People v. White*, 2020 IL App (5th) 170345, *People v. Suggs*, 2020 IL App (2d) 170632, *People v. Handy*, 2019 IL App (1st) 170213, *People v. House*, 2019 IL App (1st) 110580-B, *appeal allowed*, No. 125124 (Ill. Jan.

29, 2020), *People v. LaPointe*, 2018 IL App (2d) 160903, *People v. Pittman*, 2018 IL App (1st) 152030. Defendants in these cases generally raise challenges to their sentences under the eighth amendment, as expressly provided in *Miller*, and under the proportionate penalties clause of the Illinois Constitution. Our supreme court has recognized, however, that eighth amendment "claims for extending *Miller* to offenders 18 years of age or older have been repeatedly rejected." *People v. Harris*, 2018 IL 121932, ¶ 61 (collecting authorities). However, whether a young adult defendant has a cognizable claim under the proportionate penalties clause is less clear. Similar to the eighth amendment, the proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I. § 11. A challenge under the proportionate penalties clause "contends that the penalty in question was not determined according to the seriousness of the offense." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). Some decisions of this court have suggested that the proportionate penalties clause may provide greater *Miller*-based protections for young adult offenders than those afforded by the eighth amendment. See *LaPointe*, 2018 IL App (2d) 160903, ¶¶ 51-53, (noting inconsistency about whether the eighth amendment and proportionate penalties clause are co-extensive and should be interpreted in "lockstep"); see also, *House*, 2019 IL App (1st) 110580-B, *appeal allowed*, No. 125124 (Ill. Jan. 29, 2020) (finding a young adults mandatory life sentence violated the proportionate penalties clause). Defendants in such cases argue, as defendant here, that there is little distinction between juvenile offenders just under the age of 18 and offenders who are barely older. The defendants also cite to emerging science regarding brain development suggesting that brain development does not stop in young adults until their mid-20s.

¶ 19    The supreme court opened the door for such arguments in *People v. Thompson*, 2015 IL 118151. In *Thompson*, the 19-year-old defendant shot and killed his father and a woman who was inside his father's house. *Id.* ¶ 4. After the court found the defendant guilty of two counts of first degree murder, he was sentenced to a term of natural life imprisonment. *Id.* ¶ 7. This court affirmed the defendant's conviction and sentence on direct appeal. *Id.* ¶ 8. The defendant filed several postconviction pleadings, including a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)) that was the subject of the supreme court's ruling. *Id.* ¶¶ 9-14. In that petition, the defendant raised due process violations and claims of ineffective assistance of counsel. *Id.* ¶ 14. On appeal, however, the defendant abandoned those claims and instead asserted that his mandatory life sentence was unconstitutional pursuant to *Miller* under both the eighth amendment and the proportionate penalties clause. *Id.* ¶¶ 16-17. This court rejected defendant's contentions, finding that his as-applied constitutional challenge was not properly before the court because it was raised for the first time on appeal. *Id.* ¶ 18.

¶ 20    The supreme court granted the defendant leave to appeal and agreed with the appellate court's conclusion that defendant forfeited his as-applied challenge to his sentence under *Miller* by raising it for the first time on appeal. *Id.* ¶ 39. The court noted that the defendant relied on the "evolving science" of juvenile maturity and brain development, but the defendant failed to establish how this "evolving science" applied to the circumstances of his case. *Id.* ¶ 38. The court noted that the circuit court was the appropriate tribunal for developing the factual record to adequately address defendant's claim. *Id.* The court stated, however, that the defendant was "not necessarily foreclosed" from raising his constitutional challenge in the circuit court and noted that the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) was "expressly

designed to resolve constitutional issues." *Id.* ¶ 44. The court concluded that "we express no opinion on the merits of any future claim raised by defendant in a new proceeding." *Id.* ¶ 44.

¶ 21 The supreme court again addressed a young adult offender's claim pursuant to *Miller* in *Harri*s, 2018 IL 121932. In *Harris*, the 18-year-old defendant received a 76-year sentence for first degree murder and aggravated battery with a firearm. *Id.* ¶ 1. The defendant contended, for the first time in his direct appeal, that his sentence violated the proportionate penalties clause. ¶ 17. This court vacated defendant's sentence finding that '[w]hile we do not minimize the seriousness of [defendant's] crimes, we believe that it shocks the moral sense of the community to send this young adult to prison for the remainder of his life, with no chance to rehabilitate himself into a useful member of society.' " *Id.* ¶ 18 (quoting *People v. Harris*, 2016 IL App (1st) 141744, ¶ 69, *aff'd in part, rev'd in part*, *Harris*, 2018 IL 121932). On appeal, the supreme court noted that the defendant was raising an as-applied challenge to his sentence. *Harris*, 2018 IL 121932, ¶ 37. The court stated that it was therefore "paramount" that the record be sufficiently developed in terms of the defendant's specific facts and circumstances. (Internal quotation marks omitted). *Id.* ¶ 39. The court noted that defendant did not raise his as-applied challenge in the trial court and thus the trial court did not hold an evidentiary hearing where it could make findings of fact regarding defendant's specific circumstances. *Id.* ¶ 40.

¶ 22 The court found that because the defendant was 18 years old at the time of the offense, *Miller* did not apply directly to his circumstances. *Id.* ¶ 45. As in *Thompson*, the supreme court determined that the record was not sufficiently developed to address the defendant's claim that *Miller* applied to his particular circumstances. *Id.* ¶ 46. Despite the defendant's arguments to the contrary, the supreme court found that the record was not sufficiently developed to address his as-applied challenge because the record contained "only basic information about defendant, primarily

from the presentence investigation report." *Id.* The court noted that an evidentiary hearing was not held and the trial court did not make any findings of fact on the "critical facts" needed to determine whether *Miller* applied to the defendant as an adult. *Id.* The court concluded that the defendant's as-applied challenge was premature because the record did not contain evidence about how the evolving science on juvenile maturity and brain development that the Supreme Court cited in *Miller* applied to the defendant's specific facts and circumstances. *Id.* The court noted, however, as it did in *Thompson*, that the defendant was "not necessarily foreclosed" from raising an as-applied challenge in another proceeding, such as in a petition under the Act. *Id.* ¶ 48.

¶ 23    Defendant here, like the defendants in *Thompson* and *Harris*, raises an as-applied challenge to his sentence. He maintains that he was only 22 years old at the time of the offense, had a difficult upbringing, and minimal criminal background and cites to studies evaluating brain development in young adults. However, these factors concern only "basic information" about defendant and do not address how evolving brain science and other *Miller* factors apply to this specific defendant. As in *Harris* and *Thompson*, there was no evidentiary hearing held in the trial court so that the court could make findings of fact on the "critical facts" needed to determine whether *Miller* applies to this defendant as an adult. Rather, the record contains "only basic information about defendant, primarily from the presentence investigation report." *Id.* ¶ 46. Defendant maintains that at the sentencing hearing, the court heard evidence regarding his upbringing and other *Miller* factors, but at the sentencing hearing defendant did not cite his individual characteristics as a basis for any proportionate penalties challenge. "Nor did he analogize himself to a juvenile offender." *People v. Figueroa*, 2020 IL App (2d) 160650, ¶ 88. Rather, defense counsel briefly argued that defendant

was 25 years old at the time of sentencing and 21 years old at the time of the offense,[5] was raised by his grandmother, worked in the family business, and was convicted under a theory of accountability. Similarly, in defendant's postsentence motion, he did not raise any argument regarding his specific factual circumstance in the context of a *Miller*-based claim. As the supreme court noted in *Harris*,

"All as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge. Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review. [Citation.] We have reiterated that a court is not capable of making an as-applied determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional as applied is premature." (Internal quotation marks omitted.) *Harris*, 2018 IL 121932, ¶ 39.

As such, the record was not sufficiently developed for us to consider defendant's as-applied challenge on appeal. As in *Thompson* and *Harris*, the record is simply insufficient to address defendant's premature as-applied constitutional challenge to his sentence. See *Figueroa*, 2020 IL App (2d) 160650, ¶ 89 (citing *People v. Vega*, 2018 IL App (1st) 160619, ¶ 57).

¶ 24    Even if we found the record was sufficient to address defendant's claims, we would nonetheless find that defendant, at 22 years old at the time of the offense, does not have a cognizable *Miller*-based claim. As noted, defendant relies on the growing trend, legally and scientifically, to afford additional weight to the qualities of youth in sentencing young adults. We

_____

[5]As noted, defendant was actually 22 years old at the time of the offense.

acknowledge this trend, and note that panels of this court have expanded such protections to offenders 18 and even 19 years old. See, *e.g.*, *House*, 2019 IL App (1st) 110580-B, *appeal allowed*, No. 125124 (Ill. Jan. 29, 2020). We are aware of no decision, however, in either this State or any other state applying *Miller* principles to a defendant who was 22 years old at the time of the offense. Defendant cites a variety of legislative enactments endorsing special consideration for youthful offenders older than 18. For instance, defendant notes that the Illinois General Assembly passed Public Act 100-1182, which provided that an offender under 21 years of age at the time of the commission of certain offenses would be eligible for parole review. See Pub. Act 100-1182 (eff. June 1, 2019) (adding 730 ILCS 5/5-4.5-110). Specifically, a qualifying offender under the age of 21 who committed a first degree murder would be eligible for parole review after serving 20 years of the sentence, but offenders serving natural-life sentences are excluded. *Id.* Defendant's point is well-taken and this court cannot ignore the growing sentiment that in some circumstances young adult offenders may be afforded special sentencing considerations similar to those provided by *Miller*. However, even accepting defendant's arguments, the line for youthful offenders is clearly drawn at 21 years old at most. Defendant can point to no authority drawing the line any older than that. While courts have been hesitant to extend the *Miller* line of cases even to offenders just barely over the age of 18 (see, *e.g.*, *White*, 2020 IL App (5th) 170345 (rejecting the 20-year-old defendant's proportionate penalties challenge to his sentence under the Act), *Handy*, 2019 IL App (1st) 170213 (rejecting the "18½"-year-old defendant's proportionate penalties challenge to his sentence under the Act), *LaPointe*, 2018 IL App (2d) 160903 (rejecting the 18-year-old defendant's proportionate penalties challenge to his sentence under the Act), *Pittman*, 2018 IL App (1st) 152030) (rejecting the 18-year-old defendant's proportionate penalties challenge to his sentence), but see *House*, 2019 IL App (1st) 110580-B, *appeal allowed*, No. 125124 (Ill. Jan. 29,

2020) (finding that a mandatory life sentence for a 19-year-old defendant who only acted as a lookout violated the proportionate penalties clause)), it is a much greater leap to extend it to a 21 year old, and an even greater leap to apply it to a 22-year-old offender, such as defendant here (*Suggs*, 2020 IL App (2d) 170632, ¶ 35 (rejecting the 23-year-old defendant's claim that his sentence violated the proportionate penalties clause under *Miller* and related cases)).

¶ 25    Defendant contends, however, that this court has found that young adults may raise as-applied challenges to their sentences where the defendant was convicted under a theory of accountability. Defendant points out that he was minimally involved in the offense because he fired only a single gunshot and his single shot did not cause Avant's death. Defendant, relying on *House*, maintains that his minimal involvement and *de facto* life sentence warrant a new sentencing hearing where the court can consider his youth and its attendant characteristics under *Miller*.

¶ 26    In *House*, the 19-year-old defendant acted as the lookout while other members of his gang executed two victims for selling drugs in their territory. *House*, 2019 IL App (1st) 110580-B, ¶¶ 5, 14, 17. The defendant was convicted of two counts of first-degree murder, then sentenced to two consecutive mandatory life sentences. *Id.* ¶ 19. The defendant filed a direct appeal and a petition under the Act. *Id.* ¶¶ 20, 21. In his postconviction petition, the defendant contended, *inter alia*, that the imposition of a mandatory life sentence was unconstitutional. *Id.* ¶ 23. The circuit court dismissed defendant's petition and defendant appealed that ruling to this court. *Id.* ¶¶ 23-24.

¶ 27    On appeal, this court determined that the defendant was entitled to a new sentencing hearing under *Miller*. *Id.* ¶ 32. The court distinguished the supreme court's ruling in *Harris* by noting that the defendant in that case was the "actual shooter," while defendant House was convicted under a theory of accountability. *Id.* The *House* court explained that "defendant's conviction under the theory of accountability weighed heavily in our conclusion that his mandatory

natural life sentence shocked the moral conscience of the community." *Id.* The court "question[ed] the propriety of a mandatory natural life sentence for a 19-year-old defendant convicted under a theory of accountability." *Id.* ¶ 46. The court noted that defendant received the same sentence as the offenders who actually shot the victims. *Id.* The court also discussed developing science showing the continuing brain development in adolescents. *Id.* ¶¶ 47-48. Ultimately, the court concluded that, in light of the circumstances, the defendant was entitled to a new sentencing hearing during which the trial court could consider the relevant mitigating factors outlined in *Miller* and related cases prior to determining his life sentence. *Id.* ¶ 65.

¶ 28    We find the circumstances in this case distinguishable from those present in *House*. Although defendant here was also convicted under a theory of accountability, he did not act merely as a lookout as the defendant did in *House*. Rather, defendant was an active participant in the crime and fired a gunshot at Avant, causing him to fall. It was this gunshot that allowed defendant's accomplice to stand over Avant and shoot him in the head several times. We observe that in discussing the defendant's minimal role in the offense, the *House* court relied extensively on the supreme court's decision in *People v. Leon Miller*, 202 Ill. 2d 328 (2002) (*Leon Miller*). In *Leon Miller*, the supreme court found that a juvenile defendant's mandatory sentence of natural life imprisonment violated the proportionate penalties clause where the defendant was convicted under a theory of accountability. *Id.* at 337, 341. The 15-year-old defendant in *Leon Miller*, like the defendant in *House*, acted as a lookout during the shooting, but never handled a gun. *Id.* at 341. Nonetheless, he was sentenced to a mandatory term of life imprisonment without the possibility of a parole. *Id.* The supreme court found that such a sentence "grossly distort[ed] the factual realities of the case and [did] not accurately represent defendant's personal culpability." *Id.* With regard to the defendant's culpability, the supreme court stated that the defendant was "the least

culpable offender imaginable, a 15-year-old who had 'about a minute from the time this plan began until the act was completed by other persons.' " *Id.*

¶ 29    Here, we cannot say that defendant was the "least culpable offender imaginable." Unlike the defendants in *House* and *Leon Miller*, defendant handled a gun, fired a gunshot at the victim, and actually hit him with a bullet. Defendant was therefore an active participant in the offense. Defendant also had ample time to consider his participation where the record shows that the group of men in the vehicle saw Avant and Martin walking on the street and then took the time to discuss the shooting and pass out firearms.

¶ 30    Another significant factor for the court in *House* and the supreme court in *Leon Miller* was that the defendant's sentence was mandatory. The *House* court observed that the sentencing court's "ability to take any factors into consideration was negated by the mandatory nature of defendant's sentence." *House*, 2019 IL App (1st) 110580-B, ¶ 64. The *House* court noted that these mitigating factors included defendant's age, family background, the fact that he was only the lookout, his lack of prior violent convictions, and his rehabilitative potential. *Id.* Here, defendant's sentence was discretionary, which allowed the court to consider the factors identified by the court in *House*. Indeed, the record shows that at his sentencing hearing, defendant presented a pre-sentence investigation report and defense counsel argued in mitigation regarding defendant's age, familial, educational, and criminal background, and defendant's potential for rehabilitation. In exercising its discretion to determine defendant's sentence, the court noted that it considered all of the factors presented in mitigation. Accordingly, "[b]ecause defendant was an adult, an active participant in the crime[], and received a discretionary sentence, he is not entitled to a new hearing for a more in-depth consideration of his youth under *House*." *Handy*, 2019 IL App (1st) 170213, ¶ 41.

¶ 31    Finally, we observe that in rendering its sentence, the court stated that it considered the effect of *Miller*, "even though it is not applicable here." Although the court did not expressly indicate which factors it was considering, as discussed below, the court is not required to state on the record the precise factors it considered in determining a defendant's sentence. Accordingly, we find that the record was not sufficiently developed to address defendant's as-applied constitutional challenge to his sentence, and that, in any event, the 22-year-old defendant is not entitled to a new sentencing hearing where the court can consider his youth and its attendant characteristics under *Miller*.

¶ 32                                  B. Excessive Sentence

¶ 33    Finally, defendant contends that his sentence is excessive in light of his young age, criminal history, family background, and other factors that demonstrate his potential for rehabilitation. Defendant maintains that in determining his sentence, the court also failed to adequately consider his difficult childhood, his poor health, and his minimal role in the offense. Defendant asserts that this court should therefore remand his cause for resentencing or reduce his sentence to the statutory minimum.

¶ 34                                  1. *Standard of Review*

¶ 35    A reviewing court will not alter a defendant's sentence absent an abuse of discretion by the trial court. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A trial court abuses its discretion in determining a sentence where the sentence is greatly at variance with the spirit and purpose of the law or if it is manifestly disproportionate to the nature of the offense. *Id.* The trial court is afforded such deference because it is in a better position than the reviewing court to weigh the relevant sentencing factors such as " 'defendant's credibility, demeanor, general moral character, mentality, social environment, and age.' " *People v. Stevens*, 324 Ill. App. 3d 1084, 1093-94 (2001) (quoting

*People v. Streit*, 142 Ill. 2d 13, 19 (1991)). In the absence of evidence to the contrary, we presume that the sentencing court considered all mitigating evidence presented. *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 51 (citing *People v. Burton*, 184 Ill. 2d 1, 34 (1998)).

¶ 36                                    2. *Defendant's Sentence*

¶ 37    Here, defendant was found guilty of first degree murder (720 ILCS 5/9-1(A)(2) (West 2016)) and thus eligible for a term of imprisonment between 20 and 60 years (730 ILCS 5/5-4.5-20(a)(1) (West 2016)). Because defendant personally discharged a firearm during the commission of the offense, the court was required to add a 20-year firearm enhancement to his sentence. 730 ILCS 5/5-8-1(a)(1)(d)(ii) (West 2016). The court sentenced defendant to 22 years' imprisonment on the first degree murder charge, with a mandatory, consecutive 20-year firearm enhancement, for a total term of imprisonment of 42 years. Thus, the 22-year sentence on the first degree murder conviction fell well within the statutorily prescribed range, and, indeed, was only two years more than the minimum allowable sentence.

¶ 38    Defendant nonetheless contends that the court did not adequately consider the mitigating factors presented and that he was entitled to the minimum allowable sentence. The record shows, however, that during the sentencing hearing, defense counsel identified the same mitigating factors defendant brings to our attention on appeal, including defendant's youth, difficult upbringing, lack of criminal background, and rehabilitative potential. It is not our function to independently reweigh these factors and substitute our judgment for that of the trial court. *Alexander*, 239 Ill. 2d at 214-15. Although the trial court did not specifically identify which factors it considered in determining defendant's sentence, we observe that a trial court is not required to specify on the record the reasons for the sentence imposed (*People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 22) nor is it required to recite and assign value to each factor presented at the sentencing hearing (*People v.*

*Baker*, 241 Ill. App. 3d 495, 499 (1993)). Rather, it is presumed that the trial court properly considered all mitigating factors and rehabilitative potential before it, and the burden is on defendant to affirmatively show the contrary. *People v. Brazziel*, 406 Ill. App. 3d 412, 434 (2010). Defendant here has failed to do so.

¶ 39    Further, although defendant presented mitigating factors, we note that the court is not required to give greater weight to mitigating factors than to the seriousness of the offense, nor does the presence of mitigating factors either require a minimum sentence or preclude a maximum sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123 (citing *Alexander*, 239 Ill. 2d at 214). Defendant points out that the court expressly stated that it had to consider defendant's potential for rehabilitation, but nonetheless sentenced him to a *de facto* life sentence, depriving him of any opportunity to be rehabilitated. We observe, however, that the rehabilitative potential of a defendant is only one of the factors that the trial court needs to weigh in deciding a sentence and does not outweigh any other factor. *People v. Flores*, 404 Ill. App. 3d 155, 159 (2010). Accordingly, we find no abuse of discretion where the sentence imposed was within the prescribed statutory range, does not greatly vary from the purpose of the law, and is not manifestly disproportionate to the nature of the offense. *Brazziel*, 406 Ill. App. 3d at 433-34 (citing *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)).

¶ 40                                    III. CONCLUSION

¶ 41    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 42    Affirmed.