# Illinois Official Reports

## Appellate Court

---

### *People v. Williams*, 2018 IL App (1st) 151373

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORDELL WILLIAMS, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-1373 |
| Filed | May 11, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 94-CR-15518; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Sentence vacated; remanded with directions; mittimus corrected. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Gilbert C. Lenz, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1   The defendant, Cordell Williams, was found guilty of two counts of first degree murder based upon the theory of accountability and sentenced to mandatory natural life in prison without the possibility of parole. In three prior appeals, this court affirmed his conviction, the summary dismissal of his postconviction petition, and the dismissal of his first successive postconviction petition. The defendant then filed a motion for leave to file a second successive postconviction petition, arguing that his mandatory life sentence violated both the United States and the Illinois Constitutions. The circuit court denied his motion, and the defendant now appeals. For the following reasons, we vacate the defendant's sentence, remand this case to the circuit court for a new sentencing hearing, and instruct the circuit court to issue an amended mittimus reflecting a sentencing credit of 441 days.

¶ 2                                      BACKGROUND

¶ 3   In May 1994, the defendant was 19 years old and a member of a street gang. Shortly after midnight on May 26, 1994, he was driving his mother's car with three other gang members as passengers. One of those passengers, 17-year-old David Evans, told the defendant that he saw rival gang members inside a restaurant. Evans told the defendant to stop the car and open the trunk, and the defendant complied. Evans exited the car, retrieved a gun from the trunk, and proceeded to fatally shoot two people inside the restaurant. After the shootings, Evans returned to the car, and the defendant drove him and the other passengers away from the scene.

¶ 4   The defendant was charged with first degree murder pursuant to Illinois's accountability statute, which provides that "[a] person is legally accountable for the conduct of another when *** [e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5-2 (West 1994). After trial, a jury found the defendant guilty of first degree murder based on the theory of accountability.

¶ 5   The applicable sentencing statute at the time allowed a court, in first degree murder cases, to sentence the defendant to a term of natural life imprisonment where the defendant "is found guilty of murdering more than one victim." 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1994). Accordingly, in August 1995, the circuit court sentenced the defendant to natural life in prison without the possibility of parole.

¶ 6   The defendant has engaged in extensive postconviction litigation. First, the defendant directly appealed his conviction. We affirmed his conviction and sentence on March 26, 1999. *People v. Williams*, 303 Ill. App. 3d 1103 (1999) (table) (unpublished order under Illinois Supreme Court Rule 23). The defendant then filed his first postconviction petition in March 2000, alleging ineffective assistance of appellate counsel. We affirmed the circuit court's dismissal of his first postconviction petition on September 6, 2002. *People v. Williams*, 333 Ill. App. 3d 1214 (2002) (table) (unpublished order under Illinois Supreme Court Rule 23). Two weeks later, the defendant filed his first successive postconviction petition claiming actual innocence on the basis of new evidence. The circuit court dismissed that petition, and we affirmed the circuit court's dismissal on September 9, 2004. *People v. Williams*, 351 Ill. App. 3d 1171 (2004) (table) (unpublished order under Illinois Supreme Court Rule 23). The defendant next filed a petition for writ of *habeas corpus* in April 2008, alleging, among other claims, that his due process rights were violated because he did not have an opportunity to

respond to the prosecution's argument on accountability and that his sentence was unconstitutional. The circuit court dismissed the *habeas corpus* petition, and we affirmed that dismissal on December 15, 2009, finding no issues of arguable merit. *People v. Williams*, 395 Ill. App. 3d 1120 (2009) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7     On October 18, 2011, the defendant filed a *pro se* petition titled "Motion to Vacate Void Judgment"[1] pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). In the section 2-1401 petition, the defendant alleged, *inter alia*, that his natural life sentence is void because the sentencing statute was declared unconstitutional under the single-subject clause (Ill. Const. 1970, art. IV, § 8(d)). The circuit court found the section 2-1401 petition untimely, found that the defendant's claims were barred as *res judicata*, and dismissed the section 2-1401 petition. In 2012, after the circuit court's dismissal of the 2-1401 petition, but before the defendant's appeal from that dismissal was decided, the United States Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012), which held that mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes violates the eighth amendment's prohibition on cruel and unusual punishments. On appeal, the defendant relied on *Miller* to argue that his mandatory sentence of life without the possibility of parole is unconstitutional as applied to him under the federal and state constitutions, and that he is entitled to credit against his sentence for time served in presentence custody. On July 14, 2014, this court affirmed the circuit court's dismissal of the section 2-1401 petition, finding that the defendant's petition was untimely and that its claims were barred by *res judicata*. *People v. Williams*, 2014 IL App (1st) 120796-U, ¶¶ 26-27. We acknowledged that *Miller* was decided after the defendant filed his section 2-1401 petition; however, we did not address the merits of his claim under *Miller*, or his request for credit for time spent in presentence custody. *Id.* ¶¶ 28-29. We explained that a postconviction petition, and not a section 2-1401 petition, was the appropriate method for collaterally attacking a sentence on constitutional grounds. *Id.* ¶ 28.

¶ 8     The instant appeal stems from the defendant's December 2014 *pro se* motion for leave to file a second successive postconviction petition (the motion). The denial of the motion to file his petition is the subject of this appeal. In the motion, the defendant argued that he should be allowed leave to file a second successive postconviction petition because his mandatory sentence of natural life without the possibility of parole is unconstitutional as applied to him in light of *Miller*. The defendant's motion claimed that he satisfied the cause-and-prejudice requirements needed to grant leave to file a successive postconviction petition under section 122-1(f) of the Code of Criminal Procedure of 1963. See 725 ILCS 5/122-1(f) (West 2014) (courts may grant leave to file a successive postconviction petition only where a defendant "shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings" and "shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process"). With respect to "cause," the defendant argued that he could not have raised this claim earlier because the primary authority he relied upon, *Miller*, was not decided until 2012. With respect to "prejudice," the defendant claimed that he is prejudiced because his life sentence is now

---

[1]That submission was erroneously titled as a "motion" rather than as a "petition."

unconstitutional under *Miller*, such that he is entitled to resentencing, including credit for time served.

¶ 9 The circuit court denied the motion upon finding that the defendant failed to satisfy the "prejudice" prong of the cause-and-prejudice test. Specifically, the circuit court found that the defendant's mandatory life-without-parole sentence did not violate his due process rights because *Miller* only applies to defendants who were under the age of 18 at the time of their crimes, whereas the defendant was 19 years old when he committed his offense. Accordingly, the circuit court denied the defendant's motion for leave to file a second successive postconviction petition. This appeal followed.

¶ 10 ANALYSIS

¶ 11 We note that we have jurisdiction to review this matter, as the defendant filed a timely notice of appeal following the denial of his motion. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. Dec. 11, 2014).

¶ 12 The defendant argues that the circuit court should have granted his motion seeking leave to file a successive postconviction petition because he met the "prejudice" prong of the cause-and-prejudice test. Specifically, he argues that (1) his mandatory sentence of natural life without the possibility of parole is unconstitutional as applied to him and (2) he should receive a credit of 441 days for time served in presentence custody.

¶ 13 Before we address the merits of the defendant's arguments, we consider the State's claims that we should affirm the circuit court's ruling on procedural grounds. First, the State argues that the defendant failed to create a sufficient record establishing his as-applied constitutional challenge. See *People v. Thompson*, 2015 IL 118151, ¶¶ 36-37 (an as-applied challenge requires a showing that the statute violates the constitution *as it applies to the facts and circumstances of the challenging party*, and thus, the appellate record must be sufficiently developed in terms of those individualized facts and circumstances for appellate review). The State argues that "the record here contains no facts to suggest how [the science on juvenile brains] applies to defendant here or that the conclusions of the various studies apply with equal force to this 19-year-old defendant." However, in his brief, the defendant cites scientific studies finding that 19-year-old brains are very similar to juvenile brains, presumably those of 17-year-olds. The record before us is sufficient for this court to thoroughly review and consider the as-applied constitutional challenge raised by the defendant. Thus, we reject the State's first procedural argument. Second, the State argues that *res judicata* bars our review of the defendant's appeal because the defendant has previously claimed that his life-without-parole sentence is unconstitutional. Generally, the doctrine of *res judicata* bars us from consideration of issues that were raised or could have been raised in earlier proceedings. *People v. English*, 403 Ill. App. 3d 121, 130 (2010). We acknowledge that the defendant has made prior challenges to his sentence. However, in the defendant's prior appeals, this specific issue—whether his sentence is unconstitutional as applied to him under *Miller*—has never been addressed. The defendant could not raise this issue before *Miller* was decided in 2012. Therefore, we also reject this alternate procedural argument by the State.

¶ 14 We now turn to the defendant's argument that his mandatory life-without-parole sentence is unconstitutional as applied to him because the sentencing judge was barred from considering several factors, particularly his youth and his limited participation in the crime. The defendant

- 4 -

directs us to *People v. Miller*, 202 Ill. 2d 328 (2002) (*Leon Miller*),[2] in which our supreme court found that the mandatory natural life sentence violated the proportionate penalties clause of the Illinois Constitution as it applied to the 15-year-old defendant who (like the defendant here) had been convicted of two counts of first degree murder under the accountability and multiple-murders statutes. The defendant in this case acknowledges that, unlike the defendant in *Leon Miller*, he was 19 years old at the time of his offense. He also acknowledges that his case is not controlled by the United States Supreme Court's decision in *Miller* because he was not a juvenile. Nonetheless, he encourages us to apply the principles from *Miller*, *Leon Miller*, and other cases to the facts and circumstances of his case and find that his mandatory life-without-parole sentence is unconstitutional.

¶ 15    We first examine the standard of review on the defendant's motion, considering the lengthy procedural posture of this case. The Post-Conviction Hearing Act provides a procedural mechanism through which a criminal defendant can assert that his federal or state constitutional rights were substantially violated in his original trial or sentencing hearing. 725 ILCS 5/122-1(a) (West 2014); *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). Generally, a defendant may file only one postconviction petition. *People v. Davis*, 2014 IL 115595, ¶ 14; 725 ILCS 5/122-1(f) (West 2014). A defendant may file a successive postconviction petition upon obtaining leave of the court to do so. *People v. Edwards*, 2012 IL 111711, ¶ 24. Courts shall grant leave to file a successive postconviction petition where a defendant can establish "cause and prejudice" for the failure to raise the claim earlier. *Davis*, 2014 IL 115595, ¶ 14; 725 ILCS 5/122-1(f) (West 2014). Cause is established when "some objective factor external to the defense" impeded efforts to raise the claim in an earlier proceeding. *Davis*, 2014 IL 115595, ¶ 14. Prejudice is established when "a claimed constitutional error [occurred] that so infected the entire trial that the resulting conviction or sentence violates due process." *Id.* We review *de novo* the question of whether the defendant's pleadings satisfied the cause-and-prejudice test, such that the circuit court should have granted his motion for leave to file a second successive postconviction petition. See *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25.

¶ 16    Here, the State concedes that the defendant satisfied the "cause" prong of the cause-and-prejudice test because the primary authority upon which the defendant relied, *Miller*, was not decided until 2012, 17 years after the defendant's conviction and sentence. The defendant could not have raised this issue based on *Miller* before then. Thus, we focus on whether the defendant satisfied the "prejudice" prong of the cause-and-prejudice test. That prong depends on the merits of his constitutional claim. "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.' " *Miller*, 567 U.S. at 469 (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). The United States Supreme Court in *Miller* held that mandatory life-without-parole sentences imposed on juveniles are unconstitutional, noting that, " '[t]he concept of proportionality is central to the Eighth Amendment.' " *Id.* (quoting *Graham v. Florida*, 560 U.S. 48, 59 (2010)). Similarly, the proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A challenge under the proportionate penalties clause "contends that the penalty in

---

[2]We will refer to this case as "*Leon Miller*" to avoid confusion with the *Alabama v. Miller* case.

question was not determined according to the seriousness of the offense." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). A violation may be shown where the penalty imposed is " 'cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " *Id.* (quoting *People v. Moss*, 206 Ill. 2d 503, 522 (2003)).

¶ 17    The defendant argues that under the particular facts of his case, a mandatory sentence of life without parole is disproportionate. We preface our consideration of this argument by acknowledging the defendant's role in the murders. Specifically, the defendant, at Evans's request, stopped the car in front of the restaurant and opened the trunk containing the gun. He also waited while Evans entered the restaurant and shot the two victims, and then drove Evans away from the scene of the crime. The seriousness of the defendant's actions cannot be discounted.

¶ 18    However, the defendant's young age of 19 at the time of the offense also cannot be discounted. While he was not legally a juvenile when the murders were committed, there is a growing body of scientific evidence that the young adult brain, such as that of the defendant at age 19, is still developing, rendering young adults more similar to juveniles than mature adults. See, *e.g.*, *People v. House*, 2015 IL App (1st) 110580, ¶ 95. "Research in neurobiology and developmental psychology has shown that the brain doesn't finish developing until the mid-20s, far later than was previously thought." Vincent Schiraldi & Bruce Western, *Why 21 Year-Old Offenders Should Be Tried in Family Court*, Wash. Post (Oct. 2, 2015), http://www.washingtonpost.com/opinions/time-to-raise-the-juvenile-age-limit/2015/10/02/948e317c-6862-11e5-9ef3-fde182507eac_story.html. It has been a trend in our court to consider this scientific evidence in our treatment of juveniles and young adults because "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Leon Miller*, 202 Ill. 2d at 339.

¶ 19    Although the United States Supreme Court in *Roper* affirmed that the division between an adult and juvenile defendant is age 18, the court also recognized "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Roper*, 543 U.S. at 574. And this court has previously stated, "we find the designation that after age 18 an individual is a mature adult appears to be somewhat arbitrary." *House*, 2015 IL App (1st) 110580, ¶ 95. We agree, as there is no scientific evidence to support the conclusion that at age 18, a defendant's brain is magically transformed to maturity such that it is different than it was the day before his eighteenth birthday. In fact, the scientific evidence suggests the opposite conclusion. Specifically, that there is no bright line of demarcation regarding brain maturity between a 17-year-old and an 18- or 19-year-old.

¶ 20    We find this case to be analogous to *House*, in which this court held that a mandatory natural life sentence was unconstitutional as applied to the 19-year-old defendant who, just like the defendant here, was found guilty of two counts of first degree murder based on the theory of accountability. *Id.* ¶ 102. In that case, we stated:

> "[W]e question the propriety of mandatory natural life for a 19 year old defendant convicted under a theory of accountability. Although defendant acted as a lookout during the commission of the crime and was not the actual shooter, he received a mandatory natural life sentence, the same sentence applicable to the person who pulled the trigger." *Id.* ¶ 89.

¶ 21    Similarly, the defendant here received the same sentence as the shooter, Evans. While we acknowledge that, under the theory of accountability, the focus is on the nature of the

homicides and not a defendant's role in them (*People v. Foster*, 198 Ill. App. 3d 986, 999 (1990)), we believe that, under the circumstances of this case, the sentencing court should have been allowed the discretion to at least consider the defendant's level of participation in the crime. Moreover, Evans, who was 17 years old at the time of the offense, received a new sentencing hearing after the issuance of *Miller*. It would be unjust if Evans, the shooter in the murders, received a new sentencing hearing simply because he was 17 years old when he pulled the trigger, whereas the defendant would be deprived of a new sentencing hearing because was 19 years old when he drove Evans away from the crime scene.

¶ 22    The State argues that *House* is distinguishable because the defendant there never knew his father, was raised by his grandmother, and did not graduate from high school, while the defendant in this case had a good home life, finished high school, and had a job. We find these differences to be unpersuasive in light of the other significant factual similarities to *House*. In both cases, the defendants were 19 years old at the time of their offense and had no history of criminal violence. Both were convicted of murder under the theory of accountability. Perhaps most significantly, both had relatively limited participation in the crime. The State further argues that this court in *House* failed to recognize our supreme court's decision in *People v. Taylor*, 102 Ill. 2d 201 (1984), which rejected a facial challenge to the statute mandating a sentence of natural life for multiple murders. However, *Taylor* is not applicable to either *House* or the case before us for three reasons: (1) the defendant there made a *facial* challenge to the multiple-murders statute, not an *as-applied* challenge, (2) the case did not rest upon the theory of accountability, and (3) the age of the defendant was not at issue. Thus, *Taylor* was not relevant to *House*, is not relevant here, and we reject the State's argument.

¶ 23    Given the particular circumstances of this case, especially the defendant's youth and limited participation in the offense, we conclude that his mandatory sentence of natural life without the possibility of parole cannot stand. Consequently, we hold that the defendant's sentence violates the proportionate penalties clause of the Illinois Constitution as applied to him under the facts of this case. See *Sharpe*, 216 Ill. 2d at 487 (a penalty violates the proportionate penalties clause if so wholly disproportionate to the offense committed as to shock the moral sense of the community).

¶ 24    We emphasize that we are not holding that all mandatory life-without-parole sentences are unconstitutional for 19-year-olds. Rather, we hold that a mandatory sentence of life without parole, *as applied under the facts and circumstances of this case*, is unconstitutional. Notably, at the time of sentencing, the circuit court had no discretion to consider individualized factors related to the defendant before imposing sentence. See *Leon Miller*, 202 Ill. 2d at 336 ("The legislature's discretion necessarily includes the power to prescribe mandatory sentences, even if these mandatory sentences restrict the judiciary's discretion in imposing sentences. [Citation.] However, the power to impose sentences is not without limitation; the penalty must satisfy constitutional constrictions.").

¶ 25    For the reasons stated, the defendant has been prejudiced by the statutes under which he was sentenced and has thus satisfied the "prejudice" prong of the cause-and-prejudice test. Therefore, the circuit court erred in denying the defendant's motion for leave to file a second successive postconviction petition. Yet, we need not remand for further postconviction proceedings. Instead, because we have found the defendant's mandatory life-without-parole sentence to be unconstitutional, the proper remedy is resentencing. See *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 51 (a defendant is entitled to a new sentencing hearing when his

sentence is found to be unconstitutional, rendering further postconviction proceedings unnecessary).

¶ 26　　Accordingly, we vacate the defendant's sentence, and we remand this case to the circuit court for a new sentencing hearing. At the new sentencing hearing, we instruct the circuit court to consider all relevant mitigating factors, particularly the defendant's youth and limited participation in the offense.

¶ 27　　We next address the defendant's argument that he is entitled to 441 days of sentencing credit for time served prior to his sentencing. The defendant urges that if he is sentenced to a term of years upon resentencing, he would then be entitled to that credit. Criminal defendants are entitled to sentencing credit for each day spent in custody prior to sentencing. *People v. Ligons*, 325 Ill. App. 3d 753, 759 (2001). This court may correct the mittimus to reflect the proper sentence credit without remanding the matter to the circuit court for that purpose. *People v. Pryor*, 372 Ill. App. 3d 422, 438 (2007); Ill. S. Ct. R. 615(b).

¶ 28　　The State's response is that the defendant is not entitled to presentence credit for time served because he received a natural life sentence. However, if upon resentencing, the defendant receives a term of years, he would be entitled to presentence credit. Thus, upon resentencing, if the defendant is sentenced to a term of years, we instruct the circuit court to issue an amended mittimus reflecting a sentencing credit of 441 days.

¶ 29　　　　　　　　　　　　　　　　　CONCLUSION

¶ 30　　For the foregoing reasons, we vacate the defendant's sentence, and we remand this case to the circuit court for a new sentencing hearing. If the defendant is resentenced to a term of years, we also instruct the circuit court to issue an amended mittimus reflecting a sentencing credit of 441 days.

¶ 31　　Sentence vacated; remanded with directions; mittimus corrected.