# Illinois Official Reports

## Appellate Court

---

### *People v. Lusby*, 2018 IL App (3d) 150189

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ASHANTI LUSBY, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0189 |
| Filed | August 21, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 01-CF-664; the Hon. David Martin Carlson, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Deborah Nall, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Lawrence M. Bauer, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justice O'Brien concurred in the judgment and opinion.<br>Presiding Justice Carter dissented, with opinion. |

**OPINION**

¶ 1    Petitioner Ashanti Lusby was convicted of first degree murder, aggravated criminal sexual assault, and home invasion. He was 16 years old at the time the offenses occurred. He filed a direct appeal and, subsequently, a *pro se* postconviction petition, which were both denied by this court. He later filed a motion for leave to file a successive postconviction petition, arguing that his *de facto* life sentence violated his eighth amendment rights because the trial court did not consider his age and its attendant characteristics in accordance with *Miller v. Alabama*, 567 U.S. 460 (2012). The State requested that the trial court allow it to file objections to Lusby's motion, which the court granted. The State also argued its objections before the court. Neither Lusby nor his defense attorney was present for the State's arguments. The trial court denied Lusby's motion and he appealed, arguing that (1) the trial court erred when it denied his motion for leave to file a successive postconviction petition, (2) the trial court erred when it allowed the State to file and argue objections to his motion, and (3) he is entitled to a new judge on remand. We reverse and remand this case for a new sentencing hearing.

¶ 2                                                    FACTS

¶ 3    On February 9, 1996, a woman was found dead in her home. She had multiple rectal and vaginal lacerations, knife wounds to her neck, and a gunshot wound above her right eye. Lusby, who was 16 years old at the time of the offense, was charged in a 15-count indictment for first degree murder, aggravated criminal sexual assault, and home invasion for the events that occurred on February 9.

¶ 4    The jury found Lusby guilty of all 15 charges. In October 2002, Lusby filed a motion for a new trial, which the trial court denied. In March 2003, a sentencing hearing was held. A presentence investigation report (PSI) was submitted to the court. The report stated that Lusby was born in Chicago, Illinois, on April 11, 1979. He moved to Joliet, Illinois, when he was 10 years old. He went back to Chicago for one year when he was 14 years old but eventually returned to Joliet. Lusby was single and had two children. He received his GED in the Illinois Youth Center. The last grade he completed was the tenth grade because he was expelled for "gang banging." He had used marijuana, phencyclidine (PCP), and alcohol in the past and had used marijuana every day but denied that he was currently using any drugs or alcohol. He claims that he completed drug treatment, but this could not be confirmed. He did not have any current mental health issues. Lusby had been convicted of the following offenses: (1) 1994 aggravated discharge of a firearm (juvenile), (2) 1998 robbery, (3) 2001 resisting a peace officer, and (4) 2001 aggravated battery. The State noted that Lusby also had a 1998 misdemeanor conviction for attempting to obstruct justice. Lusby's probation had been revoked on the robbery conviction in March 2000. Lusby stated that he had a good relationship with his mother and father and that they visited him often in jail, although detention facility records show that Lusby's father never visited him. He has two sisters, both of whom have theft convictions. The probation officer recommended that "defendant may benefit from counseling to control his violent tendencies." The State attached 21 victim impact letters as an addendum to the PSI. Lusby objected, arguing that the letters were prejudicial. The trial court stated, "I will base the decision on the facts of the case and not on these letters."

¶ 5     The State presented two witnesses at the sentencing hearing. Robert Miller testified that, in July 2001, he was an inmate in the Will County jail. While Miller was using the phone, Lusby approached Miller, put his hand on the receiver, and stated Miller had cut into the line waiting to use the phone. Miller and Lusby were arguing when a deputy interjected, stating that Miller did not cut and commanding Lusby to wait in line. After Miller completed his call, he got into another altercation with Lusby. Lusby "called him into the gym," and Miller followed. Once there, Lusby hit Miller in the face causing Miller a broken bone under his left eye, a broken nose, and a cut on his lip requiring three stitches. Jean Happ testified concerning her victim impact statement, which was admitted into evidence. Defense counsel did not present any evidence or witnesses.

¶ 6     Ultimately, Lusby's 15 convictions were reduced to three: one count for first degree murder, one for aggravated sexual assault, and one for home invasion. The State requested that the other first degree murder counts (I, III through XIII) merge with count II (first degree murder for intentional killing with exceptional brutal and heinous behavior indicative of wanton cruelty). The State noted that the trial court may enhance Lusby's sentence on count II to a minimum of 60 years and a maximum of 100 years pursuant to section 5-8-2 of the Unified Code of Corrections (730 ILCS 5/5-8-2 (West 2002)). The State also asked the court to merge the other aggravated sexual assault convictions (counts IX, XI, XII) with count X (aggravated sexual assault) and the home invasion convictions in counts XIV and XV with count XIII (home invasion). It stated that the trial court may sentence Lusby to a maximum of 30 years on counts X and XIII and that both counts are to run consecutively to the first degree murder charge.

¶ 7     During the trial court's oral pronouncement, it stated:

"THE COURT: All right. Well, this is a case that is a very difficult case from the standpoint of the facts of the injuries and of the method of murder of the victim. It certain—certainly the defendant's age is a factor at the very least to the extent that he is not eligible for the imposition of capital punishment based solely because of his age, because but for his age at under the age of 18, certainly this—these are the type of things, let me put it that way, that I have seen that all the attorneys that are in this trial have seen as facts that would—that could be considered capital punishment activities.

But I cannot, I cannot ignore the fact that Miss Happ was terrorized and sexually assaulted and humiliated and executed in her own home, and this was clearly a depraved act by you, Mr. Lusby, and it shows absolutely no respect for human life. It is ironic to me I guess that this Miss Happ was working to provide a positive influence on children in the area and the area that you lived in and even children that were—would be yours or your nieces or nephews or other family members might have been influenced positively by this woman, but your actions saw that didn't happen.

So it is very difficult for me to consider any leniency in this case. It is very difficult for me to see any factors in mitigation. I have gone through the section on mitigation. There are no factors in mitigation that apply.

I have gone through the factors in aggravation and those factors there are many that apply, and I sincerely believe that the appropriate sentence is a sentence that will see that this does not occur outside of the Department of Corrections again. This is a

choice that you made at a young age and I know that choices, youthful choices can be—are not, you know, sometimes are [*sic*] sometimes in very very poor judgment, but this is not one that can be taken back, and this is not one that can be considered minor, and this is not one that can be considered for anything but setting your future in the Department of Corrections.

From what I've seen here from everything that I have seen and heard in this trial this is a life you chose, a life of carrying weapons, a life of showing no respect for human life, and I am not at all uncomfortable in imposing the maximum sentence on the murder of 100 years. The consecutive sentence on the other two Class X offenses again the manner and method of this crime makes me convinced that it is not for me to minimize it in any way, and as a consequence I will impose an additional consecutive 30 years on each of these offenses. So that is the order of the Court. Certainly you have every right to appeal the sentence."

¶ 8 Thus, the court sentenced Lusby to 100 years' imprisonment on the first degree murder conviction to be followed by concurrent 30 year sentences for aggravated criminal sexual assault and home invasion, totaling 130 years' imprisonment. Lusby filed a motion to reconsider, arguing that the trial court failed to consider Lusby's age, potential for rehabilitation, and potential to be restored to useful citizenship during sentencing. The trial court denied the motion, stating:

"THE COURT: All right. I tink [*sic*] these motions are required prior to a thorough appellate review. It's always difficult for the Trial Judge because you prepare yourself for sentencing like this, you sit down and you look at everything. You look at the law and look at the sentencing Code, because it's confusing, and you try to fashion the sentence appropriate and consisten [*sic*] with the sentencing Code and appropriate to the facts. I believe I felt comfortable with my sentence at the time. I believe I followed the law as I understood it and took into account all the factors both in aggravation and in mitigation that apply here. So show the motion to reconsider sentence presented and argued and denied."

¶ 9 Lusby filed a direct appeal to this court. *People v. Lusby*, 353 Ill. App. 3d 1109 (2004) (table) (unpublished order under Supreme Court Rule 23). This court affirmed the trial court's decision, and our supreme court denied Lusby's petition for leave to appeal in March 2005. *Id.*, *appeal denied*, 214 Ill. 2d 544 (2005).

¶ 10 In September 2005, Lusby filed a *pro se* postconviction petition. Lusby claimed that his right to due process was violated when he was required to wear an electric stun belt in the presence of the jury and that defense counsel rendered ineffective assistance of counsel when it failed to object to the use of the belt. The trial court dismissed the petition, and Lusby appealed. This court affirmed the trial court's dismissal. *People v. Lusby*, 377 Ill. App. 3d 1156 (2007) (table) (unpublished order under Supreme Court Rule 23). Our supreme court denied his petition for leave to appeal in September 2009. *Id.*, *appeal denied*, 233 Ill. 2d 582 (2009).

¶ 11 In November 2014, Lusby filed a *pro se* motion for leave to file a successive postconviction petition. In the motion, he argued that his *de facto* life sentence violated his eighth amendment rights. He claimed that he had met the cause and prejudice requirements to file a successive postconviction petition under section 122-1(f) of the Post-Conviction Hearing Act (725 ILCS 5/122-1(f) (West 2014)) because (1) the ruling in *Miller*, 567 U.S.

- 4 -

460, which established that a court must consider a juvenile's age and its attendant characteristics before sentencing him to mandatory life imprisonment, was issued after Lusby's trial and initial postconviction petition and (2) Lusby did not have an opportunity to present mitigating evidence so the trial court could consider his age and the possible impact of his age-related factors on his commission of the offense.

¶ 12    The State requested a 35-day extension to file objections to Lusby's motion, which the trial court allowed. In its objections, the State alleged that *Miller* did not apply to this case because the Court in *Miller* addressed mandatory life sentences, not *de facto* life sentences. It also argued that our supreme court in *People v. Davis*, 2014 IL 115595, ruled that *Miller* does not apply to a discretionary life sentence. It further alleged that the court properly considered all the evidence before making its findings.

¶ 13    In January 2015, without the presence of Lusby or his defense attorney, the State argued its objections before the court, and the court denied Lusby's petition, stating:

> "THE COURT: All right[.] Show that I have reviewed all the pleadings, I have reviewed the Court file, and I will find that the request for a second—I guess it's a second post-conviction petition to be filed is denied based upon the law[.]"

Lusby appealed.

¶ 14                                    ANALYSIS
¶ 15              I. Motion for Leave to File a Successive Postconviction Petition
¶ 16    Lusby argues that the trial court erred when it denied his motion for leave to file a successive postconviction petition. Specifically, Lusby claims that he had met the requisite cause and prejudice test to file a successive petition because (1) he could not assert his claim until the Supreme Court's decision in *Miller*, 567 U.S. 460, and our supreme court's decision in *Davis*, 2014 IL 115595, and (2) the trial court failed to consider his age and its attendant characteristics during sentencing and, therefore, violated his eighth amendment rights.

¶ 17    Citing *People v. Guerrero*, 2012 IL 112020, ¶ 20, the State argues that the lack of precedent on a particular position does not constitute "cause" because Lusby must raise any issues to preserve it for review even when the law is unfavorable to his position. It further claims that Lusby did not show "cause" because there were no external factors that impeded Lusby's ability to raise the claim during his initial postconviction petition, as he raised the same argument in his motion to reconsider. Also, it contends that Lusby did not show prejudice because (1) the record shows that the trial court considered his age during sentencing; (2) regardless of whether the trial court considered Lusby's age, his sentence "reflects irreparable corruption" and the trial court properly sentenced him to 130 years; and (3) *Miller* addresses mandatory life sentences whereas this case involves a *de facto* life sentence.

¶ 18    Because the parties dispute whether *Miller* applies to this case, we first consider its applicability. The eighth amendment prohibits the imposition of cruel and unusual punishment and applies to the states through the fourteenth amendment. *Davis*, 2014 IL 115595, ¶ 18 (citing *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). "The eighth amendment's ban on excessive sanctions flows from the basic principle that criminal punishment should be graduated and proportioned to both the offender and the offense." *Id.* "To determine whether a punishment is so disproportionate as to be cruel and unusual, a court must look beyond

history to the evolving standards of decency that mark the progress of a maturing society." (Internal quotation marks omitted.) *Id.*

¶ 19    In *Miller*, the defendant was convicted of murder and sentenced to mandatory life imprisonment without parole. The Supreme Court determined that a sentence of life without parole for a juvenile who committed any offense, including homicide, without the court's consideration of the juvenile's age or its attendant characteristics, violates the eighth amendment. *Miller*, 567 U.S. at 489. Relying on *Roper* and *Graham*, the Court reasoned that youth characteristics "diminish the penological justifications for imposing the harshest sentences on juvenile offenders." *Id.* at 472; see also *Roper*, 543 U.S. 551 (holding that the eighth amendment bars capital punishment of juveniles); *Graham v. Florida*, 560 U.S. 48 (2010) (finding that the eighth amendment prohibits a sentence of life without parole for juveniles who commit nonhomicide offenses). It declined to consider whether the eighth amendment requires a "categorical bar on life without parole for juveniles." *Miller*, 567 U.S. at 479. Instead, the Court found that a court has the ability to sentence a juvenile to life in prison without parole but it must take into consideration "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" beforehand. *Id.* at 480.

¶ 20    Recently, our supreme court in *People v. Holman*, 2017 IL 120655, held that *Miller* applies to cases when a defendant is sentenced to a discretionary life sentence. It reasoned that a juvenile's diminished culpability is "neither crime-nor sentence-specific" and that discretionary life sentences for juveniles are "disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." *Id.* ¶ 40.

¶ 21    Lusby's 130-year sentence is a *de facto* life sentence. See *People v. Smolley*, 2018 IL App (3d) 150577, ¶ 22 (15-year-old defendant's 65-year sentence constituted *de facto* life sentence); *People v. Buffer*, 2017 IL App (1st) 142931, ¶ 62 (16-year-old defendant's 50-year sentence constituted *de facto* life sentence); *People v. Ortiz*, 2016 IL App (1st) 133294, ¶ 24 (defendant's 60-year sentence constituted *de facto* life sentence). Moreover, our supreme court in *Holman* established that *Miller* is also applicable to a discretionary life sentence. Therefore, we find that *Miller* applies in this case.

¶ 22    Next, we consider whether Lusby has met the cause and prejudice test although *Miller* was decided after his trial and the filing of his initial postconviction petition. The Post-Conviction Hearing Act allows the filing of only one postconviction petition without leave of the court. 725 ILCS 5/122-1(f) (West 2016). "[A] defendant faces immense procedural default hurdles when bringing a successive postconviction petition." *Davis*, 2014 IL 115595, ¶ 14. Because it interferes with the finality of criminal litigation, these hurdles are lowered only in limited circumstances. *Id.* "One such basis for relaxing the bar against successive postconviction petitions is where a petitioner can establish 'cause and prejudice' for the failure to raise the claim earlier." *Id.*; 725 ILCS 5/122-1(f) (West 2016). Cause refers to some objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceeding. *Davis*, 2014 IL 115595, ¶ 14. Prejudice refers to a claimed constitutional error that so infected the entire trial that the resulting conviction or sentence violates due process. *Id.* "Both prongs must be satisfied for the defendant to prevail." *Id.*

¶ 23    Our supreme court in *Davis* determined that the Court's decision in *Miller* constitutes "cause" under section 122-1(f) because it was not available to counsel earlier. *Id.* ¶ 42. Here, *Miller* was not decided until seven years after Lusby filed his initial postconviction petition.

*Miller* was not available to Lusby's counsel at the time of his sentencing or at the time he filed his initial postconviction petition.

¶ 24 The State argues that Lusby did not show "cause" because he previously argued that the trial court failed to consider his age in his motion to reconsider. Lusby did argue that the trial court failed to consider his age during sentencing in his motion to reconsider. However, Lusby is specifically arguing that *Miller*, which requires a court to consider a juvenile's age and its attendant characteristics before sentencing him to a life sentence, was applicable to this case and should be applied retroactively. Defense counsel did not have an opportunity to present this argument because *Miller* was decided after he filed his initial postconviction petition. See *People v. Williams*, 2018 IL App (1st) 151373, ¶ 13 (rejecting the State's *res judicata* argument because *Miller* was decided 17 years after the defendant's conviction and sentence). Therefore, we find that Lusby met the "cause" prong of the cause and prejudice test.

¶ 25 Lusby claims that he also met the "prejudice" prong under the cause and prejudice test and requests that this court remand this case for a new sentencing hearing rather than proceed to the second-stage postconviction proceedings. *Davis*, 2014 IL 115595, and *Holman*, 2017 IL 120655, provide guidance on this issue. In *Davis*, the defendant fatally shot two people. *Davis*, 2014 IL 115595, ¶ 4. He was convicted of murder and sentenced to natural life imprisonment without the possibility of parole. *Id.* ¶ 5. The First District determined that *Miller* applied retroactively on postconviction review and remanded the defendant's case for a new sentencing hearing, and the State appealed. *Id.* ¶ 10. The supreme court noted that a new rule is not applied retroactively to cases on collateral review unless (1) it is a new substantive rule or (2) it is a rule " 'implicating the fundamental fairness and accuracy of the criminal proceeding.' " *Id.* ¶ 36 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004)). Relying on *People v. Morfin*, 2012 IL App (1st) 103568, the court explained that the Supreme Court's ruling in *Miller* created a new substantive law because, although *Miller* actually mandates a new procedure by requiring a court to consider a juvenile's age during sentencing, the rule "is the result of a substantive change in the law that prohibits mandatory life-without-parole sentencing." (Internal quotation marks omitted.) *Davis*, 2014 IL 115595, ¶ 39. Therefore, the court determined that *Miller* applied retroactively. It also held that, based on *Miller*'s substantive rule that prohibits mandatory life without parole of juveniles, *Miller* constitutes prejudice under the cause and prejudice test because "it retroactively applies to defendant's sentencing hearing." *Id.* ¶ 42.

¶ 26 In *Holman*, the defendant argued that the trial court erred when it denied his motion for leave to file a successive postconviction petition. *Holman*, 2017 IL 120655, ¶ 20. On appeal, the defendant argued that his discretionary life sentence was unconstitutional under *Miller*. *Id.* Our supreme court determined that a trial court must consider a juvenile's age-related characteristics as specified in *Miller* because "age is not a chronological fact but a multifaceted set of attributes that carry constitutional significance." *Id.* ¶¶ 43-44. These characteristics include:

> "(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's

incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id.* ¶ 46.

The court reviewed the trial record and held that the defendant's sentence was constitutional. *Id.* ¶¶ 47, 50. It reasoned that (1) the trial court's statement that "it found 'no mitigating factors' " (*id.* ¶ 49) was about the 12 factors enumerated in section 5-5-3.1 of the Unified Code of Corrections (730 ILCS 5/5-5-3.1 (West 2016)) and not about the *Miller* factors, (2) the trial court did not have any evidence related to the statutory factors in mitigation enumerated in section 5-5-3.1, and (3) the defendant intentionally decided not to present any mitigating evidence despite his opportunity to do so. The court further found that the trial court "explicitly stated that it considered the trial evidence and the PSI" and that the minimal evidence related to the *Miller* factors did not undermine the "significant evidence" related to factors in aggravation. *Holman*, 2017 IL 120655, ¶¶ 48-50. It concluded that the trial court properly denied his motion for leave to file a successive postconviction petition. *Id.* ¶ 50.

¶ 27        Here, the trial court mentions age in two instances: (1) when the court stated that Lusby is not eligible for capital punishment because of his age and (2) when the court stated, "This is a choice that you made at a young age and I know that choices, youthful choices can be—are not, you know, sometimes are [*sic*] sometimes in very very poor judgment, but this is not one that can be taken back, and this is not one that can be considered minor, and this is not one that can be considered for anything but setting your future in the Department of Corrections." Based on the ruling, the trial court did not address Lusby's age-related characteristics; rather, it gave a generalized statement about youth and their poor judgment. Unlike the trial court in *Holman*, there is no indication in the record that the trial court considered the evidence of Lusby's "immaturity, impetuosity, and failure to appreciate risks and consequences" or family environment in the PSI. The PSI included various incidences of such evidence including that (1) Lusby was expelled from the tenth grade for "gang banging"; (2) he had used marijuana, PCP, and alcohol; (3) he had a lengthy criminal history including his 1994 aggravated discharge of a firearm juvenile conviction; (4) his sisters also had a criminal history; and (5) the probation officer had recommended Lusby attend counseling to control his "violent tendencies."

¶ 28        The trial court also stated that there were no factors in mitigation, and similar to *Holman*, we find that the trial court was referring to the factors enumerated in section 5-5-3.1. However, unlike *Holman*, the trial court did not "explicitly" state that it considered the evidence in Lusby's PSI during sentencing, and thus, we cannot conclude that the trial court considered any evidence related to the *Miller* factors. Therefore, we find that Lusby was prejudiced because *Miller* is applied retroactively and the trial court did not consider his age and the attendant characteristics described in *Miller* before sentencing him to *de facto* life.

¶ 29        We note that the crime for which Lusby was convicted and sentenced was heinous. Under *Miller*, a trial court may sentence "the rare juvenile offender whose crime reflects irreparable corruption" to life without parole. *Miller*, 567 U.S. at 479-80. However, "[t]he court may make that decision only after considering the defendant's youth and its attendant characteristics." *Holman*, 2017 IL 120655, ¶ 46. Generally, a case will advance to the three-stage process for reviewing postconviction petitions when the court determines that the petitioner has satisfied the cause and prejudice test. See *People v. Bailey*, 2017 IL 121450, ¶ 26. Because we hold that Lusby's sentence violated the eighth amendment, we remand this

case for resentencing. See *Smolley*, 2018 IL App (3d) 150577, ¶ 21 ("[w]here the record does not indicate that the trial court considered the defendant's characteristics of youth before sentencing a juvenile to a *de facto* life sentence, the case should be remanded for a new sentencing hearing"); *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 51 ("Because defendant's sentence is unconstitutional, he is entitled to a new sentencing hearing. There is no need for further postconviction proceedings on this issue."). This issue is dispositive of this appeal. However, we address the remaining issues as they may occur on rehearing.

¶ 30                                 II. State's Objections

¶ 31    Lusby argues that the trial court erred when it allowed the State to file and argue objections to his motion for leave to file a successive postconviction petition. Both parties contend that the same issue is addressed in *People v. Bailey*, 2016 IL App (3d) 140207 (*Bailey I*), which was currently pending before the supreme court at the time Lusby filed this appeal. Since then, the supreme court made its decision in *People v. Bailey,* 2017 IL 121450 (*Bailey II*). Based on the supreme court's ruling in *Bailey II*, the State concedes that the trial court erred when it allowed the objections.

¶ 32    In *Bailey II*, the court held that the State is not permitted to participate at the cause and prejudice stage of successive postconviction proceedings because (1) the court is statutorily required to make an independent determination of whether the petitioner met the requisite of cause and prejudice, (2) there is no provision in the statute that allows an evidentiary hearing on the issue of cause and prejudice, and (3) it would be fundamentally unfair for the State to participate as "successive postconviction petitions are typically filed *pro se* and the Act makes no provision for a defendant to be entitled to counsel until after a postconviction petition is docketed." *Id.* ¶¶ 24, 27.

¶ 33    Pursuant to *Bailey II,* the State improperly filed and argued objections to Lusby's motion. Therefore, the trial court erred when it allowed the objections.

¶ 34                              III. Substitution of Judge

¶ 35    Lastly, Lusby requests that this case be heard before a different judge on remand. "There is no absolute right to a substitution of judge at a post-conviction proceeding. [Citation.] Rather, the same judge who presided over the defendant's trial should hear his post-conviction petition, unless it is shown that the defendant would be substantially prejudiced." *People v. Hall*, 157 Ill. 2d 324, 331 (1993). The trial court erred when it denied Lusby's motion despite the supreme court's ruling in *Davis* that *Miller* satisfies the requisite cause and prejudice test under section 122-1(f) of the Post-Conviction Hearing Act. It also improperly allowed the State to file and argue objections to Lusby's motion. However, we do not see any malicious intent in the trial court's errors and there is "no indication that the court will not follow the law on remand." *People v. White*, 2017 IL App (1st) 142358, ¶ 43. Therefore, we deny Lusby's request for a new judge on remand.

¶ 36                                    CONCLUSION

¶ 37    The judgment of the circuit court of Will County is reversed and remanded.

¶ 38    Reversed and remanded.

¶ 39    PRESIDING JUSTICE CARTER, dissenting:

¶ 40    I respectfully dissent from the majority's decision in the present case. I would find that defendant has failed to establish prejudice under the cause and prejudice test. In my opinion, the trial court's comments show that it considered defendant's youth and its attendant circumstances in sentencing defendant. The trial court even considered those factors a second time at the hearing on the motion to reconsider sentence when defendant again raised the issue of his age and asserted that the trial court had failed to consider his age, his potential for rehabilitation, and his potential to be restored to useful citizenship.

¶ 41    In *Holman*, our supreme court recognized that "a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." See *Holman*, 2017 IL 120655, ¶ 46. Defendant in the instant case sexually assaulted and then executed the victim, a 27-year-old school teacher, in her own home. When the victim was later discovered, she had multiple rectal and vaginal lacerations, knife wounds to her neck, and a gunshot wound above her right eye. Defendant's semen was found in the victim's rectum and vagina. As the trial court's comments in sentencing indicate, the trial court determined that the horrendous conduct of this defendant showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. See *id.* I would find, therefore, that defendant's sentence passes constitutional standards. See *id.* ¶¶ 46-50. I cannot join the majority in its conclusion that the trial court failed to consider the required information, much of which was contained in the PSI, merely because the trial court did not expressly state that it had considered the PSI. I would, thus, affirm the trial court's denial of defendant's motion for leave to file a successive postconviction petition.