2021 IL App (1st) 172707-U

THIRD DIVISION
June 23, 2021

No. 1-17-2707

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 83 C 3503 |
| HERSCHEL GLENN, | ) ) ) | Honorable Thomas Hennelly, Judge, presiding |
| Defendant-Appellant. | ) | |

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*: Affirmed. Successive post-conviction properly dismissed. Defendant could not state claim for violation of eight amendment or proportionate penalties clause of Illinois Constitution.

¶ 2   On May 8, 1982, defendant Herschel Glenn, a 24-year-old policeman, murdered James Wright and sexually assault and murdered Lillian Final. The bodies were discovered in a forest preserve overlapping Kane and Cook Counties; Wright's body was found in Kane County, Final's in Cook. Glenn was tried and convicted for the Wright murder in the circuit court of Kane County and received a 70-year sentence. For the sexual assault and murder of Final, Glenn

was tried in the circuit court of Cook County, convicted, and sentenced to 30 years for the sexual assault and life imprisonment for the murder. Glenn's convictions in both cases were affirmed on direct appeal. *People v. Glenn*, 233 Ill. App. 3d 666 (1992) (affirming Cook County conviction); *People v. Glenn*, 137 Ill. App. 3d 803 (1987) (Kane County conviction).

¶ 3 In December 2016, Glenn filed a motion for leave to file a successive postconviction petition. Glenn argued that the life sentence he received for killing Final violated his rights under the eighth amendment as interpreted by the United States Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012) and the proportionate penalties clause of the Illinois Constitution. The circuit court denied Glenn's motion, and he appealed. We affirm.

¶ 4 Generally, the Post-Conviction Hearing Act permits the filing of only one postconviction petition. 725 ILCS 5/122-1(f) (West 2016). A prisoner may file a successive postconviction petition, but only with leave of court, which may be granted only upon a showing of "cause for [the prisoner's] failure to bring the claim in [the prisoner's] initial postconviction proceedings and prejudice result[ing] from that failure." *Id*.

¶ 5 To establish cause, the prisoner must "identify[] an objective factor that impeded [the prisoner's] ability to raise a specific claim during [the prisoner's] initial postconviction proceedings." *Id*. To establish prejudice, the prisoner must "demonstrate[e] that the claim not raised during [the prisoner's] initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id*. This so-called "cause and prejudice" test "involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122–2.1(a)(2) of the Act." *People v. Smith*, 2014 IL 115946, ¶ 35. "[L]eave of court to file a successive postconviction petition should be denied when it is clear,

from a review of the successive petition and the documentation submitted by the petitioner, that *the claims alleged by the petitioner fail as a matter of law* or where the successive petition with supporting documentation is insufficient to justify further proceedings." (Emphasis added.) *Id*.

¶ 6    Here, the circuit court denied Glenn's motion for leave based, among other things, on its determination that Glenn's proposed eighth amendment and proportionate penalties clause arguments failed as a matter of law. We agree with that determination.

¶ 7    We start with the eighth amendment claim. The eighth amendment bars the government from imposing "cruel and unusual punishments." U.S. Const., amd, VII. In *Miller*, 560 U.S. at 479, the United States Supreme Court held that the Eighth Amendment categorically bars the imposition of mandatory life without parole sentences against juvenile defendants convicted of murder. In *People v. Davis*, 2014 IL 115595, ¶ 42, our supreme court held that *Miller* applied retroactively to cases on collateral review. The United States Supreme Court held likewise in *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016).

¶ 8    In *People v. Holman*, 2017 IL 120655, ¶ 40, our supreme court expanded *Miller*'s holding to cover *discretionary* life sentences. The court found that "*Miller* and *Montgomery* send an unequivocal message: Life sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." *Id*. Thus, the supreme court summarized in *People v. Buffer*, 2019 IL 122327, ¶ 27, "to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense *committed while a juvenile* must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the

sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." (Emphasis added.)

¶ 9    But Glenn was not a juvenile when he committed these crimes.  He was 24. *Miller*, by its own terms, only applies to offenders who committed their offenses when they were juveniles, *i.e.*, before they turned 18, and our supreme court, at least thus far, has followed that limitation. See *Miller*, 560 U.S. at 479 ("We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for *juvenile offenders*." (Emphasis added.)); *Buffer*, 2019 IL 122327, ¶ 27; *People v. Harris*, 2018 IL 121932, ¶ 61 ("claims for extending *Miller* to offenders 18 years of age or older have been repeatedly rejected.").

¶ 10    As Glenn was 24 years old when he sexually assaulted and murdered Final, he cannot avail himself of *Miller*'s protections. See *People v. Benford*, 2021 IL App (1st) 181237, ¶ 12 (affirming order denying leave to file successive post-conviction petition seeking to assert a *Miller* claim, as petitioner was 21 years old when he committed murder).

¶ 11    That leaves Glenn's proposed proportionate penalties clause claim. The proportionate penalties clause states in relevant part, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. We ask whether "a defendant's sentence is cruel, degrading, or so wholly disproportionate to the offense so as to shock the moral conscience of the community." *Benford*, 2021 IL App (1st) 181237, ¶ 12.

¶ 12    Relying on our decisions in *People v. House*, 2019 IL App (1st) 110580-B, *appeal allowed*, 140 N.E.3d 231 (2020), and *People v. Cordell Williams*, 2018 IL App (1st) 151373,

*vacated*, 111 N.E.3d 965 (2018), Glenn argues that "a *Miller*-based proportionate penalties post-conviction petition claim can exist if the petitioner was in his mid-20s at the time of the offense." As the *Williams* decision was vacated in a supervisory order by our supreme court, we cannot look to that decision. Yet even if we did, along with our decision in *House*, which is currently under review by our supreme court, we could not agree with defendant's position.

¶ 13    Glenn is correct that, in both *House* and *Cordell Williams*, we held that *de facto* life sentences imposed on offenders who were 19 years old at the time of the offense violated the proportionate penalties clause. See *House*, 2019 IL App (1st) 110580-B, ¶ 46; *Cordell Williams*, 2018 IL App (1st) 151373, ¶¶ 20-21. But *House* and *Cordell Williams* share something in common that is wholly absent here, and it makes all the difference in the world: the defendants in *House* and *Cordell Williams* never fired a single shot or materially participated in the planning of the crimes; their convictions were based on the legal doctrine of accountability.

¶ 14    In *House*, the defendant did not actually participate in any killing—that is, he did not actually perform an act, such as firing a gun, that brought about someone's death. There was no evidence that the defendant even helped *plan* the killing. Instead, the defendant in *House* merely "took orders from higher ranking" gang members and "acted as a lookout." *House*, 2019 IL App (1st) 110580-B, ¶ 46. Likewise, in *Cordell Williams*, 2018 IL App (1st) 151373, ¶ 3, the defendant received a mandatory life sentence after he was convicted of two counts of first-degree murder in which he did two things: he opened the trunk so that the eventual shooter, David Evans, could retrieve a gun, and he drove Evans and others away afterward.

¶ 15    We explained that those unique facts—offenders who, if not juveniles, were nonetheless youthful, and whose level of participation in the murder did not rise nearly to the level of

principal actor—brought both cases within the ambit of our supreme court's ruling in *People v. Leon Miller*, 202 Ill. 2d 328 (2002). See *House*, 2019 IL App (1st) 110580-B, ¶ 46; *Cordell Williams*, 2018 IL App (1st) 151373, ¶ 24.

¶ 16    In *Leon Miller*, 202 Ill. 2d at 330, a 15-year-old defendant was convicted of two counts of first-degree murder based on a theory of accountability and sentenced to a mandatory term of life imprisonment. The evidence showed that the defendant had only a single minute to contemplate whether to participate in the crime, and his role in the offense was limited to him serving as a look-out while the actual shooter carried out the murder. *Id*. at 330-31. And when the shooting began, the defendant "ran to his girlfriend's house." *Id*. at 331. Based on those facts, our supreme court held that the defendant's mandatory life sentence violated the proportionate penalties clause. The court explained that

> "a mandatory sentence of natural life in prison with no possibility of parole grossly distorts the factual realities of the case and does not accurately represent defendant's personal culpability such that it shocks the moral sense of the community. This moral sense is particularly true, as in the case before us, where a 15–year–old with one minute to contemplate his decision to participate in the incident and stood as a lookout during the shooting, but never handled a gun, is subject to life imprisonment with no possibility of parole—the same sentence applicable to the actual shooter." *Id*. at 341.

¶ 17    In subsequent decisions, the supreme court has explained that its decision in *Leon Miller* was based on a "rare convergence of several factors"—namely, the defendant's status as a juvenile, the fact that he was convicted based on an accountability theory without ever firing a shot, and the fact that he was subjected to a mandatory sentencing scheme that precluded the

court from considering his "age or extent of participation in the crime." *People v. Huddleston*, 212 Ill. 2d 107, 131 (2004).

¶ 18    It is likewise true, as we recently recognized, that "[o]ur supreme court has suggested that life sentences for 'emerging adults' may violate the proportionate penalties clause ***." *Benford*, 2021 IL App (1st) 181237, ¶ 12 (citing *People v. Harris*, 2018 IL 121932, ¶ 40). And that is true even for offenders who were principals.

¶ 19    But that development in the law is ultimately no help to Glenn, because as case law shows, the term "emerging adults" means offenders who committed their crimes when they were between 18 and 21 years old. See *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 71. The General Assembly has taken the same view. The Juvenile Court Act of 1987 defines "minor" as "a person under the age of 21 years subject to this Act," and it defines "adult" as "a person 21 years of age or older." See 705 ILCS 405/1-3(10), 405/5-105(10), and (705 ILCS 405/1-3(2) (West 2018)).

¶ 20    Recent legislation underscores that point. As we explained in *Franklin*, 2020 IL App (1st) 171628, ¶ 62, in 2019, the General Assembly "changed the law to make a person convicted of first degree murder eligible for parole after serving only 20 years, if he or she was under 21 years old at the time of the offense and was sentenced after the law took effect." *Id*. (citing Pub. Act 100-1182 (eff. June 1, 2019) (adding 730 ILCS 5/5-4.5-110) and Pub. Act 101-288, § 5 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-4.5-110(b) and renumbering as 730 ILCS 5/5-4.5-115(b)).

¶ 21    So here, we are presented with a case in which the "rare convergence" of factors that were present in *Leon Miller* are entirely lacking. Glenn was not a juvenile when he sexually

assaulted and murdered Lillian Final; under Illinois law, he was not even a young or "emerging adult." He was 24 years old when he committed his crimes.

¶ 22    Nor is this an accountability case, as in *Leon Miller*, *House*, and *Cordell Williams*. Glenn did not merely stand watch while someone else brutalized Lillian Final. He personally violated her, then put three bullets in her head. See *People v. Ramsey*, 2019 IL App (3d) 160759, ¶ 23 (affirming second-stage dismissal of postconviction petition alleging *Miller* and proportionate penalties clause violations, where defendant was 18 at time of offense and was "solo actor who sexually assaulted and killed one minor and then broke into a residence and shot four other minors, killing one."); *People v. Handy*, 2019 IL App (1st) 170213, ¶ 41 (rejecting successive postconviction petition raising as-applied challenges under eighth amendment and proportionate penalties clause to defendant's 60-year sentence because defendant was adult who was "active participant" in violent crimes); *People v. Peters*, 2011 IL App (1st) 092839, ¶ 56 (distinguishing *Leon Miller* on basis that defendant was principal).

¶ 23    We thus agree with the circuit court that defendant's claims failed as a matter of law and were properly dismissed. We affirm the circuit court's judgment.

¶ 24    Affirmed.